## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### BEVERLY V. RHODES.

#### DECEMBER 12th, 1889.

1. CREDITOR'S BILL—*Single creditor—Decree of account.*—A single creditor at large may sue personal representative of deceased debtor in equity for account of assets, payment of his debts and general relief. *Rice* v. *Hartman*, 84 Va., 251.

2. IDEM—*Laches—Issue.*—Where bond fell due in 1875; suit brought ten years afterwards, when all the obligors were dead; the bond having been assigned as collateral and the interest regularly paid: *held*, not *laches*, and not a case for an issue out of chancery.

3. PERSONAL REPRESENTATIVES—*Personal decree.*—Where testator's estate was ample to pay all his debts, and his estate had been administered in suit for partitions to which a creditor was no party, and no refunding bonds were taken from legatees: *held*, the executor is personally liable for the debt.

Appeal from decree of circuit court of Loudoun county, rendered October 25, 1887, in the cause wherein Mary A. Rhodes was complainant, and John Williams, administrator of John Gray, deceased, J. B. Beverly in his own right and as executor of Wm. Beverly, deceased, Charles P. Janney, administrator, *d. b. n.* of Robert W. Gray, deceased, and others were defendants. The decree being favorable to the complainant, J. B. Beverly, he appealed. Opinion states the case.

*W. H. Payne* and *J. H. Alexander*, for the appellant.

*Eppa Hunton* and *R. H. Tebbs*, for the appellee.

LEWIS, P., delivered the opinion of the court.

The appellee filed her bill in the circuit court of Loudoun county, against the personal representatives of John Gray, William Beverly, and Robert W. Gray, deceased obligors in a bond for $2,000, executed on the 22d of February, 1872, to L. W. S. Hough, payable three years after date, and subsequently assigned by Hough to the complainant as collateral security for a debt of $2,000, due to her by the firm of Hough & Gray. The prayer of the bill was that all proper accounts be taken; that payment of the bond be decreed, and for general relief.

The defendants demurred to the bill, and also answered. Afterwards the cause was referred to a master to settle and report certain accounts mentioned in the decree, who duly executed the decree, and returned his report to the court. When the cause came on to be heard, the demurrer to the bill and sundry exceptions to the master's report were overruled, and a decree was entered against the defendants for the amount of the bond and unpaid interest, to be paid *de bonis testatoris*. A personal decree for the same amount was also rendered against Jas. B. Beverly, executor of Wm. Beverly, deceased, who is the sole appellant here.

The first and principal question arises upon the demurrer to the bill. The appellant insists that the complainant's remedy was at law, and that a court of equity has no jurisdiction of the case. But we do not concur in this view.

That a single creditor at large of a deceased debtor may sue the personal representative in equity, for an account of assets and the payment of his debt, is well settled both upon principle and authority. The decree for an account, however, whether the suit be brought for the plaintiff singly, or on behalf of himself and other creditors (for it makes no difference,) is for the benefit of all the creditors, and hence all may come in and prove their debts before the master, and have satisfaction of their demands equally with the plaintiff in the

suit, for all are treated as parties.  *Stephenson* v. *Taveners*, Gratt., 398; *Piedmont &c., Ins. Co. v. Maury*, 75 Va., 508; 1 Bart. Ch. Pr.; 271; *Robinson* v. *Allen*, 85 Va., 721.

In this way a multiplicity of suits is avoided, the assets are marshalled, and complete relief afforded.

The jurisdiction of a court of equity in such cases is said by some of the authorities to be founded upon the necessity of taking accounts or compelling a discovery of assets, and because there is no adequate remedy at law.  By others it is put upon the ground of *a trust* in the personal representative, which it is the duty of a court of equity to enforce.  But whatever may be the correct explanation, the jurisdiction is not only well established, but with us is practically exclusive.

" One of the most important subjects to which the theory of trusts has been extended," says Pomeroy, " is the administration of the estates of deceased persons.  The relation subsisting between executors and administrators on the one hand, and legatees, distributees, and creditors on the other, has so many of the features and incidents of an express active trust, that it has been completely embraced within the equitable jurisdiction in England, and also in the United States, where statutes have not interfered to take away or abridge the jurisdiction."  And then he goes on to say what is obviously true, namely, that at common law, although individual creditors might recover judgment for their respective demands, the legal procedure furnished absolutely no means by which the rights and claims of all the parties in interest could be ascertained and ratably adjusted, the assets proportionably distributed, and the estate finally settled, thus making a resort to a court of equity necessary for a proper administration of the assets.  1 Pom. Eq., sec. 156.

In *Kennedy* v. *Creswell*, 101 U. S., 641, the same doctrine is held.  In that case the bill was filed against the executor and devisees for the collection of a note of the testator for $12,000 held by the complainant; and the prayer of the bill was for

an account of the personal estate of the testator, a discovery of
his real estate, and the application thereof to the payment of
his debts.   Mr. Justice Bradley, in delivering the judgment of
the court, said: "The point taken by the appellant, that the
court below, sitting as a court of equity, had no jurisdiction of
the case, is not well taken.   The authorities are abundant and
well settled that a creditor of a deceased person has a right to
go into a court of equity for a discovery of assets and the pay-
ment of his debt.   When there, he will not be turned back to
a court of law to establish the validity of his claim.   The court
being in rightful possession of the cause for a discovery and
account, will proceed to a final decree upon all the merits";
citing *Thompson* v. *Brown*, 4 Johns. Ch., 619; 1 Story, Eq.,
sec. 546; 2 Williams; Ex'ors, 1718, 1719.

The case of *Duerson* v. *Alsop*, 27 Gratt., 229, which was brought
by a single creditor at large, is to the same effect.   And the
court, moreover, held in that case that the bill was substantially
a creditors' bill, although it did not profess to be filed on behalf
of all the creditors.   See, also, *Carter* v. *Hampton*, 77 Va., 631;
*Hurn* v. *Keller*, 79 Va., 415.

In the recent case of *Rice* v. *Hartman*, 84 Va., 251, the bill
was filed against the administrator and the heirs at law of the
deceased debtor, to recover the sum of $15,000, which the
complainant claimed was due him, by virtue of a contract of
the intestate in his lifetime to make provision by his will for
the complainant and his family.   And there was the usual
prayer for an account.   Objection to the jurisdiction was made
in that case also, but the court overruled it, holding that the
case was a proper one for a court of equity, on the ground,
among others, that there was a trust in the administrator,
which it was the duty of a court of equity to enforce, thus
resting its decision, in part, upon the doctrine already referred
to.

These authorities are sufficient to show that in a case like
the present, the jurisdiction of a court of equity is unquestion-
able.

Upon the merits, also, the case is with the appellee.

The chief defence set up in the answers was, that the bond in question was given as an input for John Gray, the principal in the bond, to make him an equal partner in the mercantile firm of Hough & Gray, doing business at Leesburg, and that the interest of Gray in the assets, subsequently exceeded the amount of the bond, thus reversing the relation of debtor and creditor. The report of the master, however, shows that this defence is not well founded. On the contrary, so far from the bond having been discharged in that way, the report shows that Gray's estate is indebted to the late firm in an amount exceeding $12,000.

Nor is the defence of *laches* maintainable. The bond fell due in 1875, and the suit was brought ten years thereafter. And the delay in bringing it is satisfactorily explained. The bond was assigned to the complainant as collateral security for a debt of $2,000 due to her by Hough & Gray, and the interest on it appears to have been regularly paid up to within a short period before the suit was brought. It is true the interest was paid by Hough, and that the suit was not commenced until after all the obligors in the bond had died. But we do not perceive in these circumstances anything to create suspicion of *mala fides*. The debt from Hough & Gray was doubtless held as an investment, at least such is the fair inference from the record, and no doubt the delay in bringing the suit was owing to the fact that the debt was supposed to be a safe and desirable investment. *Coles* v. *Ballard*, 78 Va., 139. At all events, the record contains nothing which warrants a decree against the complainant. And nothing more need be said to show that the court below did not err in deciding the case without the aid of a jury. It is only when the case has been rendered doubtful by the conflicting evidence of the opposing parties, that an issue can be properly directed in a chancery cause, except in particular cases wherein by statute or practice it is

made a matter of right. *Beverly* v. *Walden*, 20 Gratt., 147; *Keagy* v. *Trout*, 85 Va., 390.

Nor did the circuit court err in entering a personal decree against the appellant. It appears that the assets of his testator's estate were ample to pay all the debts of the estate, and that about a year before the present suit was brought the estate was fully administered in the chancery suit of *Beverly* v. *Beverly*. But to that suit the appellee was not a party. Its sole object was the partition of the real estate among the devisees, and the settlement of the executor's accounts therein, which was made by consent, does not, of course, affect the rights of the appellee, who was no party to the suit. The executor took no refunding bonds from the legatees, and seems not to have required any. It is clear, therefore, that he is personally liable for the claim of the appellee, and that the decree must, in all respects, be affirmed.

DECREE AFFIRMED.