# Richmond.

## CARTER'S ADMINISTRATOR v. SKILLMAN AND ANOTHER.

March 12, 1908.

1. EXECUTORS AND ADMINISTRATORS—*Compliance With Statutes—Payment to Distributee Without Refunding Bond—Subsequent Claim of Other Distributees.*—An administrator who has acted in good faith, and complied with every requirement of the statute, and, in obedience to an order of the court of his appointment, has paid over (without a refunding bond) the funds in his hands to one whom the court has adjudged to be the sole distributee of the estate, will be protected against the demands of those who come in several years thereafter claiming to be entitled to share in the distribution of the estate. While the statute (ch. 121 of Code) does not expressly mention distributees, the legal effect of compliance therewith is to give protection as fully as though the statute had so declared in express terms. The statute is full, ample and complete, and guards and protects every interest as amply as could be done by a formal suit in chancery.

2. COURTS—*Jurisdiction of Inferior Courts—Presumption—Case in Judgment.*—There is a presumption against the jurisdiction of a court of limited jurisdiction, but, when its jurisdiction is established, its judgment is entitled to the same presumption in favor of its correctness as if it were the judgment of a court of general jurisdiction. In the case in judgment a county court was authorized "to hear and determine" matters relating to the *ex parte* settlement of accounts of an administrator and to direct the payment of debts and the distribution of the surplus, and this was of itself jurisdiction over such matters.

Appeal from the Circuit Court of Loudoun county. Decree for complainants. Carter's Administrator, one of the defendants, appeals.

*Reversed.*

The opinion states the case.

*John H. Alexander* and *Richard H. Tebbs,* for appellants.

*Chas. P. Janney, N. C. Nichols, John Janney* and *Moore, Barbour & Keith,* for the appellees.

KEITH, P., delivered the opinion of the court.

Travers H. Carter died intestate, unmarried and without issue, possessed of considerable real and personal estate in the county of Loudoun, and at the November term, 1892, of the County Court of Loudoun county his estate was, on motion of Edwin J. Carter, a distributee, committed to the sheriff for administration.

The actual administration of the estate was entrusted to William S. Summers, a deputy sheriff, within whose district the decedent had resided. Summers proceeded promptly to settle his accounts as administrator before William N. Wise, a commissioner of accounts, and a balance was ascertained to be in his hands of $2,197.14, which the commissioner reported as payable to "E. J. Carter, sole heir at law of said decedent." This report was duly confirmed by the court.

At the March term, 1894, of the county court, an order was entered, that the creditors of the decedent, Travers H. Carter, appear on the first day of the May term, 1894, and show cause, if any they can, against the payment and delivery of the estate of said Travers H. Carter to his distributee, Edwin J. Carter, without a refunding bond; and at the May term, 1894, an order was entered, reciting due publication and posting of the former order, that no creditors had shown cause against it, and ordering the payment to the distributee, E. J. Carter, of the said sum of $2,197.14, without refunding bond. This payment was accordingly made.

On December 1, 1903, John H. Skillman, of the State of Washington, and Bushrod Skillman, of the State of Indiana, filed their bill in chancery, in which they made H. H. Russell,

sheriff of Loudoun county, E. J. Carter and others parties defendant, claiming that E. J. Carter was not the sole distributee of Travers H. Carter, but that he had left surviving him a mother, Mary A. Skillman, and two half brothers, besides the said Edwin J. Carter; that the mother had since died; that they had been ignorant of the death of Travers H. Carter until 1900, and had since been diligently prosecuting their claims; and that they were not parties to any proceeding touching the said personal estate or its payment to E. J. Carter.

It was originally claimed that the bill was one to surcharge and falsify the accounts of the personal representative of Travers H. Carter, but this contention was properly abandoned. The accounts of the administrator contained a full, complete and fair settlement of the estate committed to his charge. There is no pretense that a dollar has been omitted with which the administrator should have been charged, or that a penny has been credited to him with which he should not have been credited.

The sole questions are, first, was Edwin J. Carter the sole distributee, and, secondly, did the proceedings before the commissioner of accounts of Loudoun county and before the county court protect the administrator under the circumstances disclosed in this record?

The circuit court was of opinion that the sheriff, as administrator, was not protected by the order of the county court in making payment to E. J. Carter as sole distributee, and by its decree of the April term, 1906, the sheriff of Loudoun county was directed to pay to John H. Skillman and Bushrod Skillman, each, the sum of $1,046.70, with interest on $610.32, a part thereof, from April 14, 1906, until paid, and the costs of the suit. From this decree an appeal was allowed.

The facts have already been sufficiently stated. The law with respect to the settlement of fiduciary accounts, prior to the adoption of the Code of 1849 was in a very unsatisfactory condition. The revisors, in their report, say (Report of Revisors,

ch. 132, n.) there was probably no subject in relation to which they received more communications, written and oral, than with respect to the settlement of accounts of personal representatives of decedents, and guardians and committees of wards and insane persons. It appears that when the settlement of the accounts of an executor or administrator took place under the order of the court of probate, it was by commissioners appointed on motion of the executor or administrator, and they were generally chosen from among his friends and neighbors. They were often persons who had no knowledge of the principles on which accounts should be stated, and no disposition to scrutinize them very closely. Their reports were often drawn by the fiduciary himself, were not unfrequently signed by the commissioner without an examination of the vouchers, and it was seldom that those interested had any knowledge of the report having been made until it had been recorded, without being looked at either by the court or any one else. These settlements proved most fertile sources of litigation.

To remedy these evils, the revisors reported, and the legislature adopted, what appears in our Code of to-day as chapter 121, and which remains, with a few changes which add to the promptness and efficiency of the remedy, substantially as it was prepared by and appears in the Report of the Revisors of 1849. Its object was to afford a prompt, certain, efficient and inexpensive method by which the accounts of fiduciaries might be settled and estates distributed in accordance with law.

By section 2671, the judge of each court having jurisdiction of the probate of wills and granting administration on estates of decedents is required to appoint a commissioner of accounts, who shall have a general supervision of all fiduciaries admitted to qualify in said court and make all *ex parte* settlements of their accounts; and this commissioner is directed to obtain from the clerk of his court within twenty days after each term thereof a list of the fiduciaries authorized to act as such under orders entered at the said term, and examine as to

each fiduciary whether he has given such bond as the law requires, and if it appears that he has given no bond or that his bond is defective to make report thereof to his court at its next term.   He is required to keep a record of fiduciaries, in which shall be entered the name of the fiduciary, the name of the decedent of whose estate he is the representative, the name of the living person for whom he is guardian, curator, or committee; the penalty of his bond; the names of his sureties; the date of the order conferring his authority; the date of any order revoking his authority; the date of the return of every inventory of the estate; the date of each settlement of his accounts; and shall index the said book in the name of the decedent or person represented by such fiduciary.

By section 2678 it is provided that there shall be laid before the commissioner a statement of all money which any personal representative, guardian, curator, or committee shall have received, become chargeable with or have disbursed, within one year from the date of the order conferring his authority, or within any succeeding year, together with the vouchers for such disbursements, within six months after the end of every such year; and the commissioner shall state, settle and report to the court an account of the transactions of any such fiduciary, as provided by law.   And if any such fiduciary fail to make such exhibit, the commissioner and the court shall proceed against him in like manner, and the court shall impose the same penalty, unless the fiduciary is excused for sufficient reason, as is provided in cases where fiduciaries fail to return inventories of their respective estates.

By section 2679, it is provided, that if any fiduciary shall fail to lay before the commissioner a statement of receipts for any year, within six months after its expiration, and though a statement be laid before the commissioner, yet if the fiduciary be found chargeable for that year with any money not embraced in the said statement, he shall have no compensation for his services during said year, nor commission on such money, unless allowed by the court.

By section 2680 it is provided, that when any fiduciary shall have failed to lay before the commissioner a statement of his receipts for any year, a commissioner before whom the statement might have been laid shall, upon request made to him, within ten years from the commencement of such year, by any person who is interested as a creditor, legatee, distributee, surety of such fiduciary, or otherwise, or who appears as next friend of an infant so interested, issue a summons, directed to the sheriff or other officer of any county or corporation, requiring him to summon such fiduciary to lay before the commissioner a statement of his receipts and disbursements, accompanied by his vouchers, for such year, and for the time which may have since elapsed.

By section 2686 it is provided, that when any personal representative, etc., except a sheriff or other officer, shall have laid such statement before a commissioner, he shall examine whether the fiduciary has given such bond as the law requires, and whether it is in a penalty, and with sureties sufficient. Any commissioner of the court in which the order was made conferring on the fiduciary his authority, shall, at any time before such statement is laid before a commissioner, upon the application of any person who is interested or appears as next friend of an infant interested, after reasonable notice to such fiduciary, examine into any of the said matters, or inquire whether security ought to be required of a fiduciary who may have been allowed to qualify without giving it, or whether, by reason of the incapacity, misconduct, or removal of any fiduciary from this State, or for any other cause, it is improper to permit the estate of the decedent, ward, or other person, to remain under his control.

By section 2690 it is provided, that any commissioner who has for settlement the accounts of a personal representative of a decedent shall, when requested so to do by such representative, or any creditor, legatee, or distributee of the decedent, appoint a time and place for receiving proof of debts or demands against the said decedent or his estate, and four weeks

before the said time post a notice of such time and place at the front door of the court house of the circuit or corporation court wherein such fiduciary qualified on the first day of a term of such court, and also at two or more public places in the neighborhood of the place where the account is to be taken. By section 2691, the commissioner is authorized to adjourn from time to time for receiving such proof, and required within one year from the time first appointed for receiving such proof, to make out an account of all such debts or demands as may appear to him to be sufficiently proved, stating separately those of each class. By section 2692, all persons having claims against the estate are authorized to file them before the commissioner, who is required to endorse the date of filing thereon and sign the endorsement in his official character.

By section 2693 it is provided, that every commissioner shall post at the front door of the court-house of the circuit or corporation court a list of fiduciaries whose accounts are before him for settlement, stating the names of such fiduciaries, the nature of their accounts, whether as personal representative, guardian, curator, committee or trustee, and the names of their decedents, or of the persons for whom they act; and that no account of any fiduciary shall be completed by any commissioner until it shall have been mentioned in such list, for ten days after being so mentioned. By section 2697, he is directed to file his report in the office of the court by which he is appointed as soon as practicable after its completion, and with his report return such of the vouchers or evidence before him as any person interested may desire him to return, or as he may deem proper.

By section 2698 it is provided, that every such account shall lie in the clerk's office thirty days for exceptions, and shall stand confirmed at the expiration of said thirty days, if not excepted to. And the court, or judge thereof in vacation, shall examine every such account as to which exceptions shall be filed, correct any errors which may appear in the exceptions,

or any appearing on the face of the account (whether excepted to or not) ; and to this end may recommit the account to the same or another commissioner as often as it sees cause, or it may confirm the report in whole or in a qualified manner. And the clerk is required, in a book kept for the purpose, to record every report which may be so confirmed, and, at the foot of it, the order of confirmation. And, by section 2699, the report, to the extent to which it may be so confirmed, shall be taken to be correct, except so far as the same may, in a suit, in proper time, be surcharged or falsified.

By section 2700 it is further provided, that where it appears by a report made as aforesaid, or a special report of the commissioner, that money is in the hands of any fiduciary, the court, in the clerk's office of which said report is filed, may order the same to be invested or loaned out, or make such other order respecting the same as may seem to it proper.

By section 2702 it is provided, that when a report of the accounts of any guardian, curator, committee, or trustee, shall be confirmed, either in whole or in a qualified manner, the court, in the clerk's office of which said report is filed, may order payment of what shall appear due on such accounts to such persons as would be entitled to recover the same by suit in equity. And by section 2703 it is declared, that when a report of the accounts of any personal representative, and of the debts and demands against the decedent's estate shall be confirmed as aforesaid, the court shall order to be applied to the payment of such debts and demands so much of the estate in the hands of such representative, and to such creditors as shall appear proper, reserving, where it seems to the court reasonable to do so, to meet a claim of a surety for the decedent, or any other contingent claim against the estate, the proof of which has to be deferred, or to meet any other claim not finally passed upon, such sum as it may deem sufficient to pay it or a proportion thereof equal to what is ordered to be paid to other creditors of the same class, should the payment of it or such proportion afterwards appear proper.

By section 2706 it is provided, that a personal representative shall not be compelled to pay any legacy given by the will, or make distribution of the estate of his decedent, until after a year from the date of the order conferring authority on the first executor or administrator of such decedent; and, except where it is otherwise specially provided, he shall not then be compelled to make such payment or distribution until the legatee or distributee shall give him a bond, executed by himself or some other person, with sufficient surety, with condition to refund a due proportion of any debts or demands which may afterwards appear against the decedent, and of the costs attending their recovery. Such bond shall be filed in the clerk's office of the court which may have decreed such payment or distribution, or in which the accounts of such representative may be recorded.

Section 2707 provides: "If any personal representative pay any legacy given by the will or distribute any of the estate of his decedent, and there be filed in the said clerk's office a proper refunding bond for what is so paid or distributed, with security therein sufficient at the time of taking it, such personal representative shall not, on account of what is so paid or distributed, be personally liable for any debt or demand against the decedent, whether it be of record or not, unless, within one year from his qualification or before such payment or distribution, he shall have had notice of such debt or demand."

By section 2708 it is provided, that "When a report of the accounts of any personal representative and of the debts and demands against his decedent's estate shall have been filed in the office of a court, whether under this chapter or in a suit in chancery, the said court, after one year from the qualification of such personal representative, may, on the motion of a legatee or distributee of his decedent, make an order for the creditors of such decedent to show cause on some day to be named in the order against the payment and delivery of the estate of the decedent to his legatees or distributees; a copy of which order

shall be published once a week for four successive weeks in one
or more newspapers, as the court may direct.   On or after the
day named in the order of the court in term or the judge in
vacation may order the payment and delivery to the legatees
or distributees of the whole or a part of the money and other
estate not before distributed, with or without a refunding bond,
as it may prescribe; but every legatee or distributee to whom
any such payment or delivery is made, and his representatives,
may, in a suit brought against him within five years afterwards,
be adjudged to refund a due proportion of any debts or de-
mands appearing against the decedent, and the costs attending
their recovery."

And by section 2710, the county court, for good cause shown,
is required to have removed to the circuit court having juris-
diction over such county any report made to the county court
under this chapter.

We have quoted these sections very extensively in order that
it may appear how minute, how careful and how sufficient is
the provision made by our statute law for the settlement of
the accounts of fiduciaries.   It is full, ample and complete.   It
guards and protects every interest as amply as could be done
by a formal suit in chancery.   By the death of the decedent the
probate court acquires jurisdiction.   It appoints the adminis-
trator and commits the estate to his control; and, at every step
of his administration, the law provides proper machinery by
which the fiduciary can be compelled to collect and distribute
the funds committed to his care, and to settle his accounts
showing the manner in which his trust has been executed.

If the administrator in this case, instead of proceeding in
strict obedience to the provisions of chapter 121 of the Code,
had instituted a suit in chancery for direction as to his conduct
in the administration of this estate, in what respect would the
proceeding have differed from that which has been pursued?
There is not a suggestion or a hint that he had any knowledge,
or that anyone else within the jurisdiction of the court had any

knowledge, of the existence of those now claiming to be co-distributees of Edwin J. Carter. They and their forebears had cut themselves loose from Loudoun county more than half a century before. They had left not a trace behind them, and, in utter ignorance of their existence, a court of competent jurisdiction, having control over the administrator whom it had appointed and over the estate which it had committed to his care, solemnly adjudicated, after a strict compliance with the provisions of the law, that E. J. Carter was the sole distributee of Travers H. Carter, deceased, and ordered the fund, in the hands of the administrator to be paid to him without a refunding bond.

If these were creditors making the attack, we think it is scarcely denied that the administrator would be saved harmless by the statute, for by section 2707 it is expressly provided, that "a personal representative shall not, on account of what is so paid or distributed, be personally liable for any debt or demand against the decedent, whether it be of record or not, unless, within one year from his qualification or before such payment or distribution, he shall have had notice of such debt or demand." While there is no such precise language of exoneration with respect to distributees, the legal effect of a compliance with the requirements of chapter 121 is, to give protection as ample against the claims of a distributee as though the statute had so declared in express terms. In other words, it is because the statute has given to all concerned an opportunity to present their claims and demands and to have them litigated before a competent tribunal that exemption from liability attaches in favor of those who have pursued the terms of the statute. It is what has been done, or what might have been done, under the statute by those diligent in the assertion of their rights which affords protection to those who have acted in obedience to the mandate of the law.

In Woerner on Am. Law of Administration (2nd ed.), sec. 505, it is said: "Final settlements of the administration, when

made by the executor or administrator in pursuance of statutory requirement, after legal notice to all parties interested in the estate, are conclusive as to all matters therein directly adjudicated. This is declared by statute in a number of States; for instance, in California, Indiana, Nevada, New Jersey, New York, Ohio and Rhode Island. But aside from statutory enactment, the current of authorities so holding is almost unbroken. It seems supererogatory to refer to them specially. Where the notice has been given as required by the statute, the judgment will be conclusive, although rendered in the absence of all parties but the administrator; and where the statute directs notice by publication, actual or personal notice is not required."

It is said, however, that this is a court of limited jurisdiction, and that we may concede; but the only difference between a court of limited and one of general jurisdiction is, that with respect to the latter there is a presumption in favor of the jurisdiction, while with respect to courts of limited jurisdiction the presumption is against that jurisdiction.

Mr. Justice Strong, in *Miller's Ex'or* v. *United States,* 11 Wall. 268, 20 L. Ed. 135, speaking of this subject, says: "It is insisted that the district court did not find that the stocks belonged to a person engaged in the rebellion, or who had given aid or comfort thereto, which it is said are made necessary findings by the 7th section of the act, before a decree of condemnation can be entered. This is not an objection to the jurisdiction of the court. We have already shown that that was complete. It is an objection to the regularity of proceeding, and it assumes that the record must show affirmatively there was no irregularity. It presumes, therefore, against the record. The general rule, however, is, that in courts of record all things are presumed to have been rightly done. In courts of limited jurisdiction, indeed, there is a presumption against jurisdiction, but when that appears they are entitled to the same presumptions in favor of their action as other courts are. The district and

circuit courts are of limited jurisdiction, but they are not inferior courts, and they are, therefore, entitled to the same presumptions in their favor. Those presumptions are, that the court, having jurisdiction, and having entered a judgment, did everything that was necessary to warrant its entry of the judgment. Undoubtedly the contrary may be shown in a court of error, but the burden of showing it is upon him who alleges error. The legal intendment is against him. This doctrine is abundantly sustained by the authorities."

In *Erwin* v. *Lowry,* 7 How. 181, 12 L. Ed. 655, the court said: "Wherever a judgment is given by a court having jurisdiction of the parties and of the subject-matter, the exercise of jurisdiction warrants the presumption in favor of a purchaser, that the facts, which were necessary to confer jurisdiction, were found." See also *Howard* v. *Landsberg's Committee, ante* p. 161, 60 S. E. 769, decided at this term.

After the full citation which we have given from the statute law on the subject, we do not think there can be any question as to the jurisdiction of the county court in this case, for as has been well said, "The power to hear and determine a cause is jurisdiction;" and, as we have seen, the jurisdiction being established all the presumptions are in favor of the rightful exercise of that jurisdiction.

It may be well to give in full, before closing this opinion, the orders of the County Court of Loudoun county, which are as follows:

"At a county court held for Loudoun county, March 13, 1894.

"It appearing to the court that Commissioner W. N. Wise's report of the accounts of W. S. Summers, D. S., for H. H. Russell, sheriff of Loudoun county and as such administrator of Travers H. Carter, deceased, and of the debts and demands against said estate, have been filed in the office of this court under chap. 121, Code of Va., and that more than one year has elapsed since the qualification of said administrator,

on the motion of Edwin J. Carter, sole distributee of said estate, it is ordered that the creditors of said decedent do appear before this court on the first day of its May term, 1894, and show cause, if any they can, against the payment and delivery of the estate of said Travers H. Carter to his said distributee, Edwin J. Carter, without a refunding bond.

"A copy of this order shall be published once a week for four successive weeks in a newspaper published in Loudoun county, Va., and posted at the front door of the court-house on the first day of two successive terms of this court."

"At a county court held for Loudoun county, May 14, 1894, in the matter of the estate account of Travers H. Carter, deceased.

"It appearing that the order of the court made upon the motion of Edwin J. Carter, sole distributee of said estate, for the creditors of said decedent to show cause, if any they can, why the estate in the hands of his administrator should not be paid and delivered to the said distributee, has been duly published in the 'Washingtonian' and posted at the front door of the court-house as prescribed by section 2708 of the Code of Va., 1887, and no creditors of said decedent having shown cause against such payment and delivery. It is ordered that the said estate of said decedent, which has or may come into the hands of his personal representative, shall be paid and delivered to the said Edwin J. Carter, or John H. Alexander, his attorney, according to law without a refunding bond, and the account of said decedent's administrator having been returned to the office of this court for more. than thirty days, the same is approved and confirmed, and it is ordered to be recorded, and in accordance therewith said W. S. Summers, D. S., for H. H. Russell administrator of T. H. Carter, is ordered to pay to said Edwin J. Carter or J. H. Alexander, his attorney, the sum of $2,197.14."

From these orders it appears that everything was done regularly and in order, as prescribed by the statute law of this

State. The administrator had fully settled his accounts. There was no creditor whose demand had not been satisfied. There was no suggestion of the existence of any other distributee than Edwin J. Carter, and the court, having jurisdiction of the whole subject, found as a fact that he was sole distributee, and directed the administrator to pay the money over to him, which was done. More than a year had elapsed since the qualification of the administrator. He was, therefore, compellable to make distribution of the estate under our statute law.

"The payment in distribution is, however," says Croswell on Executors and Administrators, sec. 524, "dependent largely on the condition of the estate as shown in the administrator's accounts; for as was said previously in regard to payment of legacies, if his accounts show that all the debts are paid and nothing remains to be done but to distribute, the court may order the administrator to distribute, either wholly or partially, and will not allow him to retain the estate in his hands. The decree of distribution, when it is made by the court, settles the duty of the administrator to pay over the estate forthwith, if so ordered, and also protects him in making such a payment." In some States, the administrator may, before paying a distributive share, require a refunding bond to secure him against unknown debts, and so our statute provides; but, as we have seen, provision is also made for dispensing with the refunding bond, as was done in this case.

In *Sayre's Admr.* v. *Sayre,* 16 N. J. Eq. 505, it is said, that "The decree of distribution is final and conclusive between the administrator and the distributees, as to the amount of each share, and the party entitled to receive it. It is an effectual protection to the administrator against all claims for moneys paid pursuant thereto, though it should prove that the decree was erroneous and the money paid to a party not entitled."

And it would be a hard case, indeed, if an administrator, acting in perfect good faith, and in obedience to the order of the court from which he received his appointment, should not

be protected against the consequences of his obedience to its decrees.

We are of opinion that the decree of the circuit court should be reversed, and this court will enter such decree as that court should have entered.

*Reversed.*