# Richmond

CHARLES H. NICHOLAS v. BERNICE M. NICHOLAS, ADMINISTRATRIX OF THE ESTATE OF WILLIAM F. NICHOLAS, DECEASED.

November 11, 1937.

Present, All the Justices.

The opinion states the case.

*George S. Harnsberger,* for the appellant.

*Wharton & Aldhizer,* for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

This suit was instituted by Charles H. Nicholas against Bernice M. Nicholas, administratrix of the estate of William F. Nicholas, deceased, on the 28th day of September, 1936.

The bill alleges that William F. Nicholas died on the 28th day of August, 1935, intestate; that on the 18th day of September, 1935, Bernice M. Nicholas, his widow, qualified as administratrix and is now acting as such administratrix; that she has filed with the commissioner of accounts purported bills of appraisement and sale; and that complainant is a creditor of the estate of William F. Nicholas, deceased.

The prayer of the bill is that the suit be treated as a general creditors' suit; that the administratrix be required

to account for all the assets of the estate; and that the indebtedness of the estate be ascertained and the debt of complainant paid.

It is admitted that complainant did not file with the administratrix the claim sued upon and that the suit was instituted within eighteen months from the date of the qualification of the administratrix.

The administratrix demurred to the bill of complaint, on the ground that the complainant had a plain, adequate and complete remedy at law. The court, by decree entered on March 2, 1937, sustained the demurrer and dismissed the bill of complaint. It is from that decree this appeal was allowed.

It is the contention of counsel for complainant that it was error to sustain the demurrer, for the reason that the administration of an estate is the administration of a trust, and that a court of equity has exclusive jurisdiction over the administration of trust estates. On the other hand, counsel for the defendant contends that since the enactment of chapter 121 of the Code (now chapter 221 of the Code [section 5401 et seq.]), a court of equity has only concurrent jurisdiction with the court of probate established by statute, except in cases where independent equities exist.

There is no doubt that prior to the enactment of chapter 121, which first appeared in the Code of 1849 (chapter 132), a court of equity had exclusive jurisdiction of the administration of the estates of decedents. This jurisdiction was founded upon two grounds, viz: (1) That no adequate remedy existed at common law; (2) that equity always had had exclusive jurisdiction of administration of estates. That chapter 121 (now chapter 221) of the Code has wrought a radical change in the method of administering estates of decedents and has conferred upon the probate court concurrent jurisdiction with a court of equity, in such matters, seems to admit of no doubt.

In *Carter's Adm'r* v. *Skillman*, 108 Va. 204, 60 S. E. 775, 776, Judge Keith has made an analysis of chapter 121 (chap-

ter 221) of the Code and has given us a complete epitome of its various sections. In that case it is said:

"The law with respect to the settlement of fiduciary accounts, prior to the adoption of the Code of 1849 was in a very unsatisfactory condition. The revisors, in their report, say (Report of Revisors, chapter 132, n.) there was probably no subject in relation to which they received more communications, written and oral, than with respect to the settlement of accounts of personal representatives of decedents, and guardians and committees of wards and insane persons. It appears that when the settlement of the accounts of an executor or administrator took place under the order of the court of probate, it was by commissioners appointed on motion of the executor or administrator, and they were generally chosen from among his friends and neighbors. They were often persons who had no knowledge of the principles on which accounts should be stated, and no disposition to scrutinize them very closely. Their reports were often drawn by the fiduciary himself, were not unfrequently signed by the commissioner without an examination of the vouchers, and it was seldom that those interested had any knowledge of the report having been made until it had been recorded, without being looked at either by the court or any one else. These settlements proved most fertile sources of litigation.

"To remedy these evils, the revisors reported, and the legislature adopted, what appears in our Code of today (1904) as chapter 121, and which remains, with a few changes which add to the promptness and efficiency of the remedy, substantially as it was prepared by and appears in the Report of the Revisors of 1849. Its object was to afford a prompt, certain, efficient and inexpensive method by which the accounts of fiduciaries might be settled and estates distributed in accordance with law.

\*    \*    \*    \*    \*    \*    \*

"We have quoted these sections very extensively in order that it may appear how minute, how careful and how suf-

ficient is the provision made by our statute law for the settlement of the accounts of fiduciaries. It is full, ample and complete. It guards and protects every interest as amply as could be done by a formal suit in chancery. By the death of the decedent the probate court acquires jurisdiction. It appoints the administrator and commits the estate to his control; and, at every step of his administration, the law provides proper machinery by which the fiduciary can be compelled to collect and distribute the funds committed to his care, and to settle his accounts showing the manner in which his trust has been executed."

That courts of probate and courts of equity are courts of concurrent jurisdiction, unless there are independent equities existing, is, we think, a closed question.

In *Johnston* v. *Commonwealth*, 117 Va. 506, 509, 85 S. E. 566, in an opinion delivered by Judge Kelly, the doctrine of *Carter's Adm'r* v. *Skillman, supra,* is approved.

In Harrison on Wills and Administration, vol. 2, p. 768, this is said:

"In *Carter's Adm'r* v. *Skillman*, 108 Va. 204, 60 S. E. 775, Judge Keith delivered the opinion of the court, and gave a very thorough review of the Virginia provisions as to the statutory modes of settlement in the probate courts. Judge Keith, in this opinion, holds that these provisions are complete in themselves, and furnish an economical and full method for the settlement of fiduciary accounts, furnishing entire remedies to the beneficiaries, and protection to fiduciaries. This case was approved in *Johnston* v. *Commwealth,* 117 Va. 506, 85 S. E. 566, so that now the principles adjudicated in *Carter's Adm'r* v. *Skillman* may be considered the settled law of this State."

In the same work, at page 810, Judge Harrison, after a full discussion of the right of a creditor of a decedent's estate to institute a suit in equity to administer the estate, says: "It has been a mooted question in Virginia whether a creditor or distributee, or a legatee may file his bill within the year allowed an executor to settle the estate, and pay the demands against the estate, and distribute the estate.

If there are independent equities, there can be no question as to the right to file such a bill, but, independent of any equity, an executor is given twelve months in which to collect in the assets, pay the debts, and have the estate in a condition for distribution. It would seem, therefore, doubtful, where the executor is in the regular course of his administration, and is discharging his duties with fidelity, if he can be haled into court by every creditor, distributee, or legatee, when under the very statute law he may not within the year distribute the estate."

Unless it was the intention of the legislature to confer upon probate courts, in the administration of a decedent's estate, concurrent jurisdiction with a court of equity, then the enactment of chapter 121 (chapter 221) was a futile gesture. The only logical conclusion to be drawn from the action of the legislature, in this regard, is that it was the intention of the law-makers to establish a less expensive method and at the same time an equally efficient method of administering estates. This conclusion does no violence to the well-established rule that where independent equities exist and equity has acquired jurisdiction, then such jurisdiction is not susceptible of being ousted merely because there is an adequate remedy at law.

In *Filler* v. *Tyler*, 91 Va. 458, 22 S. E. 235, 237, it is said:

"Courts of equity, having such jurisdiction before the enactment of the statute * * * still retain it although the statute may furnish a complete and adequate remedy at law. Courts of equity, having once acquired jurisdiction, never lose it because jurisdiction of the same matters are given to law courts, unless the statute giving such jurisdiction uses prohibitory or restrictive words. 1 Barton's Ch. Pr., 60, 61." See also, *Beverly* v. *Rhodes*, 86 Va. 415, 10 S. E. 572; *Shield* v. *Brown*, 166 Va. 596, 186 S. E. 33, 34; *Hoge* v. *Fidelity Loan & Trust Co.*, 103 Va. 1, 48 S. E. 494.

In the case at bar it plainly appears from the averments of the bill of complaint that the probate court first acquired jurisdiction of the administration of the estate of

William F. Nicholas, deceased, and has been administering the same pursuant to the provisions of chapter 221 of the Code. That being true, and no independent equities appearing under the allegation of the bill, we are of opinion there is no error in the decree of the lower court and it will be affirmed.

*Affirmed.*

HUDGINS, J., dissenting.

My views concerning the jurisdiction of a court of equity over estates held in trust are quite different from this expressed in the majority opinion.

The bill alleges (1) that Charles H. Nicholas sues for himself and all other creditors of the estate of William F. Nicholas; (2) that the widow qualified as administratrix, the names of the heirs at law are set forth; (3) that the estate is indebted to the complainant in the sum of $1,565.-00; and (4) that the estate of the said William F. Nicholas is insolvent. Then follows an allegation to the effect that the administratrix has not fully disclosed the property which has come, or should have come into her hands, in these words: "That your complainant is advised and alleges that neither the appraisement of the said estate nor the sale bill returned by said administratrix sets forth a correct statement of the assets of said decedent's estate, but, on the other hand, it is alleged that said papers give only a partial statement of said assets. That an attested copy of said appraisement is herewith filed, marked 'Ex. Appraisement,' and an attested copy of said sale bill is herewith filed, marked 'Ex. Sale Bill,' and the same are prayed to be read as parts hereof.

"That the said Bernice M. Nicholas, Administratrix as aforesaid, is hereby called upon to give a complete and detailed statement of all of the *household* and *kitchen property, chattel property, farming implements, hay, grain,*

*straw, 'phone stock;* and *other chattel property* not listed upon the appraisement or shown by the sale bill.

"That the one year period within which said estate should have been settled has passed, but said administratrix, although often requested, has hitherto failed and refused to make settlement of same. That your complainant is further advised and alleges that had the said administratrix prudently discharged her duties this suit would not have been necessary, and she is therefore personally liable for the costs incident hereto." (Italics supplied.)

It is obvious, therefore, that the administratrix is not only charged with having failed to have all the property owned by the estate appraised, but specific property claimed to be a part of the estate is pointed out in the words italicized above.

That equity has jurisdiction to entertain or give the relief prayed for in this case, seems settled by previous decisions of this court. This principle is expressed by Judge Lewis speaking for this court in *Beverly* v. *Rhodes,* 86 Va. 415, 416, 10 S. E. 572. In that case a bill was filed against a personal representative, alleging a debt due against an estate of a decedent. "The prayer of the bill was that all proper accounts be taken; that payment of the bond be decreed, and for general relief." There was a demurrer to the bill on the ground that the remedy at law was adequate as in the case at bar. In the course of the opinion, this was said, "The first and principal question arises upon the demurrer to the bill. The appellant insists that the complainant's remedy was at law, and that a court of equity has no jurisdiction of the case. But we do not concur in this view.

"That a single creditor at large of a deceased debtor may sue the personal representative in equity, for an account of assets and the payment of his debt, is well settled both upon principle and authority. The decree for an account, however, whether the suit be brought for the plaintiff singly, or on behalf of himself and other creditors (for it makes no difference), is for the benefit of all

the creditors, and hence all may come in and prove their debts before the master, and have satisfaction of their demands equally with the plaintiff in the suit, for all are treated as parties * * *.

"In this way a multiplicity of suits is avoided, the assets are marshalled, and complete relief afforded.

"The jurisdiction of a court of equity in such cases is said by some of the authorities to be founded upon the necessity of taking accounts or compelling a discovery of assets, and because there is no adequate remedy at law. By others it is put upon the ground of *a trust* in the personal representative, which it is the duty of a court of equity to enforce. But whatever may be the correct explanation, the *jurisdiction is not only well established, but with us is practically exclusive.*

" 'One of the most important subjects to which the theory of trusts has been extended,' says Pomeroy, 'is the administration of the estates of deceased persons. The relation subsisting between executors and administrators on the one hand, and legatees, distributees, and creditors on the other, has so many of the features and incidents of an express active trust, that it has been completely embraced within the equitable jurisdiction in England, and also in the United States, where statutes have not interfered to take away or abridge the jurisdiction.' And then he goes on to say what is obviously true, namely, that at common law, although individual creditors might recover judgment for their respective demands, the legal procedure furnished absolutely no means by which the rights and claims of all the parties in interest could be ascertained and ratably adjusted, the assets proportionably distributed, and the estate finally settled, thus making a resort to a court of equity necessary for a proper administration of the assets.

"In *Kennedy* v. *Creswell,* 101 U. S. 641 [25 L. Ed. 1075] the same doctrine is held. In that case the bill was filed against the executor and devisees for the collection of a note of the testator for $12,000 held by the complainant; and the prayer of the bill was for an account of the per-

sonal estate of the testator, a discovery of his real estate, and the application thereof to the payment of his debts. Mr. Justice Bradley, in delivering the judgment of the court, said: 'The point taken by the appellant, that the court below, sitting as a court of equity, had no jurisdiction of the case, is not well taken. The *authorities are abundant and well settled that a creditor of a deceased person has a right to go into a court of equity for a discovery of assets and the payment of his debt. When there, he will not be turned back to a court of law to establish the validity of his claim.* The court being in rightful possession of the cause for a discovery and account, will proceed to a final decree upon all the merits'; citing *Thompson* v. *Brown,* 4 Johns. Ch. (N. Y.) 619; 1 Story Eq., sec. 546; 2 Williams, Ex'rs, 1718, 1719." To the same effect, see *Duerson's Adm'r* v. *Alsop,* 27 Gratt. (68 Va.) 229; *Carter* v. *Hampton's Adm'rs,* 77 Va. 631; *Hurn* v. *Keller,* 79 Va. 415. See also, *Hall* v. *Hall,* 104 Va. 773, 52 S. E. 557. (Italics supplied.)

In *Rice* v. *Hartman,* 84 Va. 251, 4 S. E. 621, objection to the jurisdiction of the court of equity was made in a suit brought by a single creditor against the administrator and the heirs of the decedent. The objection was overruled on the ground, among others, that there was a trust in the administrator which it was the duty of the court of equity to enforce.

The majority opinion cites as an authority for its conclusion, *Carter's Adm'r* v. *Skillman,* 108 Va. 204, 60 S. E. 775. I concur most heartily both in the reasoning and in the conclusion reached in that case. The suit was instituted by two heirs at law of Travers H. Carter against his administrator, more than nine years after the administrator had settled his accounts, paid all creditors of the estate, and distributed the net proceeds to one E. J. Carter, as the only heir at law. In settling the estate and making the distribution, the administrator had complied with every provision required by statute (then chapter 121 of the Code of 1887, now chapter 221 of the Code of 1919). Judge Keith in the course of the opinion gave a comprehensive re-

view of the statutory provisions regarding the settlement of estates, and held that a full compliance with those provisions, in good faith, by an administrator, was a complete exoneration of any personal liability. That is the only point decided. It is true that in the course of the discussion, he uses the language quoted in the majority opinion, but he also said that the probate proceedings and settlement of the accounts of a personal representative before the commissioner of accounts was an *ex parte* proceeding in a court of limited jurisdiction. It is nowhere suggested in the opinion that this court, at that time (1908), thought that the statutory provisions for the settlement of accounts of this nature were exclusive.

The statutory method of settling accounts of personal representatives with slight changes has been the law of this State since the adoption of the Code of 1849. The cases heretofore cited clearly show that this court, long before and since the adoption of that Code, recognized the principle that equity has jurisdiction at the instance of any creditor or distributee to compel the administrator or executor to settle his accounts, pay the debts and distribute the proceeds of an estate. There is no express language found in chapter 221 of the 1919 Code that indicates that the statutory method of settling estates was intended by the legislature to be an exclusive remedy, nor can this fact be gathered by implication from the language used. On the contrary, the statute expressly recognizes the right of either the administrator or any interested party, to have the estate administered under the supervision of the court of equity. This is clear from the provisions of section 5411 in part reading as follows: "When the account of any fiduciary is settled in a chancery cause, it shall be the duty of the clerk of the court in which said cause is, as soon as may be after a final decree therein, to certify to the clerk of the court wherein the fiduciary qualified, a copy of such account so far as the same has been confirmed, with a memorandum at the foot thereof stating the style of the suit and the date of such final decree."

It is a well established and well known principle that when by legislative mandate another remedy is provided or created, neither the common law remedy, nor the equitable remedy is excluded, unless such an intention is clearly so expressed. In this case, the creditor had the election of remedies. He could have followed the method provided by statute or he could have instituted a chancery suit, as he did.

The Chief Justice in *Shield* v. *Brown,* 166 Va. 596, 600, 186 S. E. 33, 34, states another principle which is likewise controlling here. He quoted with approval from *Hull* v. *Watts,* 95 Va. 10, 13, 27 S. E. 829: "Granting it to be true, as contended, that appellee had a complete and adequate remedy at law, it is equally true that the existence of a remedy at law cannot deprive courts of equity of jurisdiction in a matter that comes within the scope of their elementary jurisdiction."

A general classification of the subjects of equity jurisdiction according to Lord Redesdale and Judge Story is found in volume I, page 11, 3d Ed., of Barton's Chancery Practice. To the ten general classes named, the author on page 12 includes others in this language: "To these topics may be added these other cardinal subjects of equity jurisdiction,—accident; mistake; fraud; accounts; *administration of estates;* specific performance of contracts; * * *" (Italics supplied.)

The same author on page 193 says: "One or more creditors of a deceased person may on behalf of himself or themselves and all other creditors of such deceased person file a suit in equity against the personal representative of such deceased person, calling for an account and the application of the assets of the estate, real and personal, to the payment of the debts, but in West Virginia a suit of this character is subject to the rights of the personal representative to bring suit within six months after his qualification. This right of the personal representative is not exclusive for such a bill may be filed by a creditor or creditors to discover assets and enforce a claim against the estate, real and personal, in the hands of the heirs or

devisees within six months of the date of the appointment of the personal representative of the decedent.

"Creditors who bring such suits against personal representatives need not be lien creditors as in the case of suits against living persons. The death of the debtor creates the lien."

No exhaustive examination of all Virginia cases on the subject has been undertaken. We have cited ten, in which the principle has been recognized and applied by this court, in addition to two learned text writers whose statements have been quite generally accepted as conclusive on the subjects treated. Opposed to this, we have the opinion of another learned writer who does not express a positive opinion to the contrary, but simply says: "It would seem, therefore, doubtful, where the executor is in the regular course of his administration, and is discharging his duties with fidelity, if he can be haled into court by every creditor, distributee, or legatee, when under the very statute law he may not within the year distribute the estate."

It has been held by this court in a suit against an executor or administrator, by one or more creditors of the estate, that all debts due by the estate must be proven before the commissioner, to whom the case has been referred. Separate suits for the same object against the same executor or administrator, will not be permitted in any court. *Stephenson* v. *Taverners*, 9 Gratt. (50 Va.) 398; *Kent's Adm'r* v. *Cloyd's Adm'r*, 30 Gratt. (71 Va.) 555; *Ewing's Adm'r* v. *Ferguson's Adm'r*, 33 Gratt. (74 Va.) 548; *Piedmont, etc., Life Ins. Co.* v. *Maury*, 75 Va. 508; *Saunders* v. *Griggs' Adm'r*, 81 Va. 506; *Robinson* v. *Allen*, 85 Va. 721, 8 S. E. 835; *Beverly* v. *Rhodes, supra.*

It seems settled that an executor or administrator cannot be harassed by every creditor, distributee or legatee, either before or after the time allowed by statute in which to settle the estate, but he, like any other active trustee heretofore could be compelled by a beneficiary of the trust for the benefit of such beneficiary and all others who are

interested in the trust estate, to administer the trust under the supervision and direction of a court of equity.

The majority opinion seems to hold that if there are some independent equities alleged in the bill, then equity has jurisdiction.

The bill in this case alleges, as heretofore pointed out that the estate is insolvent; that there is other property, and specific property is mentioned which is owned by the estate that the administratrix has not had appraised or listed among the assets belonging to the estate; that the time permitted by statute for administratrix to have settled her estate has elapsed, and that she had failed or refused to settle. The demurrer admits these allegations. If these admissions do not constitute independent equities even under the doctrine announced in the majority opinion, I am at loss to understand the meaning of the term used.

In the last paragraph of the majority opinion, it is stated that, "* * * it plainly appears from the averments of the bill * * * that the probate court first acquired jurisdiction of the administration of the estate * * * and has been administering the same pursuant to the provisions of chapter 221 of the Code." The bill, as I read it, alleges that an administratrix was appointed; that she gave bond; had the estate appraised, and filed a bill of sale. All of this was done in the clerk's office. The commissioner of accounts before whom the statute requires fiduciary to settle the accounts has never done anything so far as it appears on this record. If the foregoing statement in the majority opinion remains, and thus becomes law, then the mere appointment of a personal representative by the clerk, without more, will deprive equity of jurisdiction of one class of active trust estates, except under extraordinary circumstances. These extraordinary circumstances or independent equities are not defined with any degree of accuracy. The result will be to create confusion and uncertainty, where heretofore there has been clarity and certainty.

It was suggested in argument, without any foundation for it in the record, that this was a frivolous or spite suit.

This may be true, but that cannot be established by demurrer, which admits the allegations of the bill to be true.

For the reasons stated, I think the decree sustaining the demurrer should be overruled, and the case reversed.

EGGLESTON, J., concurs in this dissent.