COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Humphreys, Malveaux and Fulton
Argued at Fredericksburg, Virginia


KISHNA SHIRESE MINOR, ET AL.

v.        Record No. 0980-22-4

ANNE M. HEISHMAN,
  COMMISSIONER OF ACCOUNTS

OPINION BY
JUDGE JUNIUS P. FULTON, III
OCTOBER 10, 2023

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert J. Smith, Judge

Joseph W. Stuart for appellants.

Robert B. McEntee, III, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

Amicus Curiae: Virginia Conference of Commissioners of Accounts
(John K. Cottrell; Cottrell Fletcher & Cottrell PC, on brief), for
appellee.


This appeal arises out of proceedings initiated by Anne M. Heishman, the Commissioner

of Accounts for Fairfax County ("Commissioner"), to forfeit the bond of Kishna S. Minor, the

conservator for the estate of Eric Witt Wilder ("Mr. Wilder"), an incapacitated adult.  After

receiving information indicating that Minor had underreported the assets of Mr. Wilder's estate,

the Commissioner commenced hearings to determine the veracity of the allegations.  The

hearings led the Commissioner to discover that Minor had indeed underreported certain assets,

and in fact was abusing her power as conservator by misappropriating funds from Mr. Wilder's

estate in violation of her fiduciary duties.  The Commissioner prepared a report recommending

bond forfeiture and filed that report with the trial court.  The trial court held a hearing and

subsequently confirmed the Commissioner's report.  In a final order dated June 3, 2022, the trial

court entered judgment against Minor and Liberty Mutual Insurance Company ("Liberty Mutual"), the bond surety, and ordered that the bond be forfeited in the amount of $575,126.27.[1] Both Minor and Liberty Mutual appeal. For the following reasons, we affirm the trial court's decision.

BACKGROUND

Eric Witt Wilder was born on July 31, 1926, and died on August 5, 2019. He was married to Thelma Wilder ("Mrs. Wilder") and had three adult children: Eric R. Wilder ("Eric"), Brian Wilder ("Brian"), and Cynthia Bowers ("Cynthia"). On October 12, 2018, acting on the petition of Kishna Minor, the trial court adjudicated Mr. Wilder an incapacitated adult[2] and appointed Minor, his granddaughter, as his temporary guardian and temporary conservator of his estate. On November 16, 2018, the trial court appointed Minor as the permanent legal guardian for Mr. Wilder, and the permanent conservator for his estate. In its order, the trial court noted the need for a permanent guardian and conservator for Mr. Wilder based on "the financial dissipation conducted by Brian Wilder and allowed by Mrs. Thelma Wilder." Minor qualified on the same day, and posted bond in the amount of $1,200,000, with surety provided by Liberty Mutual.

Relevant to this appeal, the trial court's orders gave Minor "the power to access, spend, transfer, sell, liquidate, encumber, and otherwise manage [Mr. Wilder's] income and assets, including any accounts jointly titled with Thelma Wilder." In addition, both orders stated that

---

[1] This amount included the amount of funds that Minor misappropriated while acting as conservator of Mr. Wilder's estate ($574,462.27), as well as the fee and costs owed to the Commissioner for the commission of her duties ($664).

[2] In its order, the trial court noted that the then 92-year-old Mr. Wilder had dementia and other ongoing health conditions that made Mr. Wilder "incapable of receiving and evaluating information effectively." The trial court further noted that Mr. Wilder "lack[ed] the capacity necessary to mak[e] responsible decisions regarding the management of his property or personal affairs."

the "Conservator shall make those reports required by Virginia Code §§ 64.2-1305 and 64.2-2021." Neither the October 2018 order nor the November 2018 order identified the assets and income of Mr. Wilder. Pursuant to the duties outlined in Code §§ 64.2-1305 and -2021, Minor filed an initial inventory, an amended inventory, a first accounting, and a second and final accounting of Mr. Wilder's estate with the Office of the Commissioner of Accounts.[3] These filings identified various assets and bank accounts belonging to Mr. Wilder's estate. However, Minor failed to identify five joint bank accounts held by Mr. Wilder and his wife, as well as an additional bank account Mr. Wilder held with Burke & Herbert Bank identified as "-4200" ("Account -4200"). It was this undisclosed bank account that gave rise to this appeal.

*I. Minor misappropriates estate funds.*

On October 15, 2018—just three days after her appointment as Mr. Wilder's temporary guardian and conservator—Minor opened Account -4200 with funds Mr. Wilder already maintained in another account—identified as "-4197"—with Burke & Herbert Bank ("Account -4197"). During the latter part of 2018 and 2019, Minor made a number of questionable purchases with funds from Account -4200. For instance, within two weeks of Minor's initial qualification as conservator, she put a $6,000 deposit on hold with Safford of Tysons, a luxury car dealer. In November of 2018, she used the account to purchase $3,000 in goods from Balsam Hill, $25,437.92 in furniture at Restoration Hardware, and over $6,000 at Next Day Blinds. She used the account to make a purchase with Carnival Cruise in January 2019 in the amount of $2,018.20. She used $2,489 from the account to purchase a Peloton exercise bike, and paid the attendant $39 monthly membership fee with funds from the account as well. The bank

---

[3] The first three filings were initially reviewed and approved by a different commissioner. Mrs. Heishman took over the administration and supervision of Minor and Mr. Wilder's estate after the second and final accounting was filed.

statements from Account -4200 further reflect 15 "Transf to Kishna" transactions totaling $166,813.57.

In addition to these questionable transactions, Minor withdrew $200,000 from Account -4200 on October 30, 2018, and used those funds to pay $100,000 each to Cynthia and Eric. In total, the questionable transactions from the undisclosed Account -4200 totaled $574,539.45.

II. *The filings with the Office of the Commissioner of Accounts and subsequent proceedings*

In January of 2019, Minor filed her initial inventory of Mr. Wilder's estate with the Office of the Commissioner of Accounts. In April of 2019, Minor filed an amended inventory. Neither of these filings contained information regarding the five joint accounts or Account -4200. The prior commissioner approved the amended inventory in May of 2019. No exceptions were filed to the prior commissioner's report approving the inventory. Minor filed the first accounting of Mr. Wilder's estate with the Office of the Commissioner of Accounts on May 14, 2019. Mr. Wilder passed away on August 5, 2019. Minor filed the second and final accounting of Mr. Wilder's estate on October 1, 2019. Again, the aforementioned bank accounts were not contained in either of Minor's accountings for the estate. On December 17, 2019, the prior commissioner approved the first accounting filed by Minor. No exceptions were filed to the prior commissioner's report approving this account. However, on December 18, 2019, prior to the review and approval of Minor's second account, Eric wrote to the predecessor commissioner alleging that Minor understated the assets of Mr. Wilder's estate in the inventory she had filed. Later, Cynthia joined Eric as an objector, though no report was ultimately filed by the Commissioner concerning Eric and Cynthia's objections.

On June 15, 2020, Eric filed a hearing request with the Commissioner, Mrs. Heishman, also requesting production of certain bank records, including records from Burke & Herbert Bank. The Commissioner initially set a hearing on the objections for December 1, 2020,

pursuant to Code § 64.2-1209. However, although the hearing was convened on that date, it was continued until January 5, 2021, because the Commissioner had received documents and allegations which indicated the potential for forfeiture of the surety bond, and she wanted the surety on Minor's bond to appear as well. Prior to adjourning the December 1 hearing, Minor confirmed the existence of the undisclosed Account -4200. In anticipation of the January 5 hearing, counsel for Minor filed a hearing brief, asserting, among other arguments, that Eric and Cynthia were not "interested parties" within the meaning of Code § 64.2-1209, and therefore the proceeding was improper. On January 5, 2021, the Commissioner re-convened the hearing and again continued it to allow Eric's counsel to file a response to the brief filed by Minor's counsel. On the same date, the Commissioner issued a subpoena duces tecum to Burke & Herbert Bank, based on the allegations made by Eric as well as the admission made by Minor during the December 1 hearing. The bank's response reflected both statements from Account -4197, which accurately reflected and accounted for transactions spent on Mr. Wilder's guardianship and his estate, and from Account -4200, transactions for which Minor never accounted. Finally, on February 3, 2021, the Commissioner convened the hearing concerning the objections of Eric and Cynthia for the third time.

It was during the first of these three hearings (the "investigatory hearings") that the Commissioner confirmed the existence of Account -4200. Minor acknowledged opening and controlling two separate accounts, explaining that Account -4200 was a "guardian account" that was only to be reported to "the State" and not to the Commissioner. During the final hearing on February 3, which Minor did not attend, evidence was presented which detailed the existence of Account -4200 and the myriad transactions Minor had made with the funds therein. Minor's counsel offered no evidence to explain or justify the transactions from Account -4200. However,

no report or further action was taken by the Commissioner as a direct result of these investigatory hearings.

After the February hearing, an auditor with the Office of the Commissioner of Accounts wrote to Minor requesting documentation explaining the propriety of the expenditures from Account -4200. Minor's counsel responded via letter on March 3, 2021, stating that "much of the non-conservator funds went to address perceived inequities or improprieties within the family" and that "[i]n terms of the expenses paid from Account 4200, most of the funds went to prepare an 'in-law' suite for her grandfather in her own house." Minor never provided any documentation or evidence to support the propriety of these transactions.

The Commissioner determined that Minor's response was insufficient, and, due to inconsistencies with the documentary evidence the Commissioner had subpoenaed from Burke & Herbert Bank, concluded that she had yet to properly account for the transactions reflected in the bank statements concerning Account -4200. The Commissioner therefore issued a summons to Minor pursuant to Code § 64.2-1216(A)[4] on April 13, 2021, and following the procedure set

---

[4]

> If any fiduciary required to account fails to make a complete and proper account within the time allowed, the commissioner of accounts shall either (i) proceed against the fiduciary in accordance with the procedures set forth in § 64.2-1215 or (ii) file with the circuit court and the clerk at such times as the court shall order, but not less than twice a year, a list of all fiduciaries who have failed to make a complete and proper account within the time allowed, excepting those fiduciaries to whom the commissioner of accounts has granted additional time. Upon the filing of this list, the clerk shall issue a summons against each fiduciary on the list, returnable to the first day of the next term of court, and the court shall take action against the fiduciary in accordance with the procedures set forth in § 64.2-1215.

Code § 64.2-1216(A).

forth in Code § 64.2-1215(A),[5] instructed Minor to file a proper final account within 30 days. Minor did not file a proper account, and on May 21, 2021, the Commissioner filed a report of noncompliance with the Fairfax County Circuit Court, pursuant to Code § 64.2-1215(A).

On May 26, 2021, pursuant to the Commissioner's report, the trial court entered a show cause summons to be heard on August 13, 2021. On August 6, 2021, Minor filed a response to the show cause order, again arguing that the proceeding was a "nullity," and also arguing that the Commissioner had made certain statements during the investigatory hearings that illustrated that she was not an impartial adjudicator. On August 13, 2021, the trial court heard the arguments of Minor and the Commissioner with regard to the show cause order. The trial court then entered an order proffered by the Commissioner, which read, in part: "[T]he Commissioner of Accounts is directed to hold a hearing to determine whether the Court should remove the fiduciary and whether, and in what amount, the fiduciary's bond should be forfeit." On the same date, August 13, 2021, the Commissioner filed a petition to remove Minor as the fiduciary of Mr. Wilder's estate, and to forfeit bond. That petition stated: "Your [C]ommissioner is of the opinion that the fiduciary's failure to file a proper account requires that she be removed as conservator and that her fiduciary bond be forfeit."

---

[5]

> If any fiduciary fails to make the return required by § 64.2-1300, the commissioner of accounts shall issue, through the sheriff or other proper officer, a summons to the fiduciary requiring him to make such return. If the fiduciary fails to make the required return within 30 days after the date of service of the summons, the commissioner of accounts shall report the fact to the circuit court. The court shall immediately issue a summons to the fiduciary requiring him to appear . . . . If, after his appearance before the court, the fiduciary continues to fail to make the required return within such time as the court may prescribe, the fiduciary shall be punished for contempt of court.

Code § 64.2-1215(A).

On September 29, 2021, the Commissioner presided over a hearing conducted pursuant to the trial court's order to determine "whether and, what amount, if any, of Ms. Minor's bond should be forfeited." Counsel for Minor and counsel for her surety, Liberty Mutual, appeared at the hearing, though Minor herself was not present. Although Minor was not present, her counsel provided evidence concerning joint accounts held by the Wilders. However, no evidence was offered to explain how the funds from Account -4200 were used to benefit Mr. Wilder. Minor's counsel objected that she was denied due process because the Commissioner was acting both as a prosecutor and as an adjudicator, and she again argued that the proceedings were a "nullity" because they were instituted by Eric and Cynthia, both of whom lacked standing as "interested person[s]" under Code § 64.2-1209. Counsel for Minor and for Liberty Mutual also argued in the alternative that the amount that they ought to be liable for was far less than the $574,462.27 that the Commissioner asserted. Cynthia attended the hearing remotely but offered no evidence or argument. Eric did not attend this hearing.

### III. *The trial court's rulings*

On October 15, 2021, the Commissioner filed her report of the hearing as ordered by the trial court, recommending forfeiture of the bond. On November 1, 2021, Minor and Liberty Mutual each separately filed exceptions to the report. On November 8 and November 10, 2021, the trial court confirmed the Commissioner's report. No appeal was noted from the November orders.

On January 21, 2022, the parties appeared before the circuit court for an order memorializing the now confirmed Commissioner's report, as well as her petition to forfeit bond. The trial court took the matters under advisement, and on April 11, 2022, the trial court issued a letter opinion addressing "whether the Commissioner of Accounts can hold a hearing pursuant to Va. Code § 64.2-1209 based on information received from a non-interested party." The trial

- 8 -

court noted Minor's argument that she had been deprived of due process because the Commissioner was acting both as an adverse party and as an arbiter, but it did not expressly address that argument in its opinion. Instead, it addressed the role of the Commissioner of Accounts under Code § 64.2-1200, and held that the Commissioner had "general supervision authority over . . . fiduciaries" and the authority "to make *ex parte* settlements of the fiduciaries' accounts." The trial court agreed that Eric and Cynthia lacked standing under Code § 64.2-1209 to seek a hearing, but it held that, "while the statute does prescribe a method by which the Commissioner can have a hearing, the statute does not say that is the *only* way a commissioner may conduct a hearing." Noting that "the Commissioner has the authority to review and report an accounting under § 64.2-1200," it decided that "it would be . . . absurd . . . to require the Commissioner to approve Ms. Minor's accounting and not look into a claim brought by an uninterested person that Ms. Minor's accounting was deficient." It therefore concluded that "the Commissioner was correct in conducting a hearing after being contacted by the decedent's son."

On May 20, 2022, Minor filed a motion for clarification and reconsideration of the trial court's April 11, 2022 letter opinion. On May 27, 2022, at the trial court's request, the Commissioner filed a response to that motion. On June 3, 2022, the trial court heard argument from Minor and the Commissioner regarding the motion and entered a final order denying the motion and entering judgment against Minor. Minor and Liberty Mutual appealed.

ANALYSIS

*I. Appellants' assignments of error on appeal*

On appeal, Minor and Liberty Mutual ("appellants") present ten assignments of error. However, these assignments of error can be broken up into four distinct categories: (1) assignments of error related to the hearing process carried out by the Commissioner, (2) assignments of error related to the Commissioner herself, (3) assignments of error related to

- 9 -

the supposed remedies available to Eric and Cynthia, and (4) assignments of error related to the evidence considered by the Commissioner.

## II. Standard of Review

To resolve the issues presented by appellants, "we must look to the statutory provisions governing the procedures for the approval of final accountings submitted by a . . . conservator for an estate to a Commissioner of Accounts and a circuit court." *Henderson v. Cook, Trustee for Noojin*, 297 Va. 699, 711 (2019). "[A]n issue of statutory interpretation is a pure question of law which we review de novo." *Id.* (alteration in original) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)).

> When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity. If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.

*Id.* (quoting *Conyers*, 273 Va. at 104). "Additionally, '[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction.'" *Id.* (alteration in original) (quoting *Meeks v. Commonwealth*, 274 Va. 798, 802 (2007) (citation and internal quotation marks omitted)). "Further, although the report of a commissioner [of accounts] does not carry the weight of a jury's verdict, 'an appellate court must give due regard to the commissioner's ability, not shared by the [trial court], to see, hear, and evaluate the witnesses at first hand.'" *Heath v. Heath*, 38 Va. App. 727, 731 (2002) (citations omitted). "'A commissioner's findings of fact which have been accepted by the trial court "are presumed to be correct when reviewed on appeal and are to be given 'great weight' by this Court. The findings will not be reversed on appeal unless plainly wrong."'" *Id.* at 731-32 (citation omitted).

### III. *The nature and history of Commissioners of Accounts in Virginia*

We next turn to the nature and history of the commissioner of accounts in Virginia. "The office of the Commissioner of Accounts is unique to Virginia and West Virginia." *Gray v. Binder*, 294 Va. 268, 276 (2017) (citing Frank O. Brown, Jr., *Virginia Practice: Probate Handbook*, § 2:11 (2014)). "Since their creation, Virginia circuit courts have been vested with jurisdiction over fiduciary matters, including the administration of estates." *Id.* "It would be 'impracticable' for circuit courts to perform every aspect of estate administration." *Id.* (quoting *Shipman v. Fletcher*, 91 Va. 473, 477 (1895)). "The Commonwealth established the office of the Commissioner of Accounts 'to afford a prompt, certain, efficient, and inexpensive method' for the settlement of fiduciaries' accounts and the distribution of estates." *Id.* (quoting *Carter Adm'r v. Skillman*, 108 Va. 204, 207 (1908)).

As a quasi-judicial official, the commissioner of accounts is "one of the most important [offices] known in the administration of justice." *Henderson*, 297 Va. at 711-12 (quoting *Gray*, 294 Va. at 276). Its origins can be traced back to the office of the commissioner in chancery, and it is considered to have "the same general authority as a commissioner in chancery, in addition to the statutory duties and responsibilities of the commissioner of accounts." *Phillips v. Rohrbaugh*, 300 Va. 289, 307 (2021) (quoting The Standing Comm. on the Comm'rs of Accts. of the Jud. Council of Va., Manual for Commissioners of Accounts at 293-94 (6th ed. 2019) (footnotes omitted)). The Supreme Court of Virginia has agreed with the Judicial Council that "[b]ased upon these background principles, . . . 'the circuit court may refer any matter it deems appropriate to the commissioner of accounts pursuant to its general referral powers to commissioners in chancery.'" *Id.* (quoting Manual for Commissioners of Accounts at 293-94). "A commissioner in chancery is an officer appointed by the [circuit court] to aid [it] in the proper and expeditious performance of [its] official duties." *Gray*, 294 Va. at 276 (quoting *Raiford v.*

- 11 -

*Raiford*, 193 Va. 221, 226 (1952)). "A good commissioner is the right arm of the court, and his services are indispensable to the due administration of justice." *Id.* (quoting *Raiford*, 193 Va. at 226). "[T]he office of commissioner in chancery is one of the most important known in the administration of justice." *Id.* (quoting *Bowers Adm'r v. Bowers*, 70 Va. (29 Gratt.) 697, 700 (1878)). "Nonetheless, commissioners serve to assist the court, not to supplant it." *Id.* (citing *Shipman*, 91 Va. at 477). "A commissioner's authority to assist the circuit court with the settlement of estates is simply an extension of the circuit court's subject matter jurisdiction to administer estates." *Id.* at 278.

"[F]rom the very necessity of their appointment and the nature of their office, [a commissioner of accounts'] work is subject to the review of the court." *Henderson*, 297 Va. at 712 (quoting *Gray*, 294 Va. at 276-77). "[The court] may accept or reject it, in whole or in part, as its judgment, upon such review, may dictate, whether it be of law or fact." *Id.* (quoting *Gray*, 294 Va. at 276-77). Finally, the General Assembly has enacted Code §§ 64.2-1200 et seq. and 64.2-1300 et seq. to govern Commissioners of Accounts and fiduciaries in Virginia. These statutes will be laid out, as relevant, in detail below.

*IV. Appellants timely noted their appeal.*

Before we reach appellants' assignments of error, we must first address the Commissioner's argument that appellants have procedurally defaulted their appeal. The Commissioner argues that "Appellants failed to note any appeal to the circuit court's order[s] confirming the Commissioner's Report over their exceptions within thirty (30) days, which was a final, appealable order. In failing to do so, they have waived their right to appeal the same in this proceeding" pursuant to Code § 8.01-675.3. That statute provides that "a notice of appeal to the Court of Appeals in any case within the jurisdiction of the court shall be filed within 30 days from the date of any final judgment order, decree, or conviction."

The Commissioner argues that the trial court's orders entered November 8 and 10, 2021, confirming the Commissioner's report "were final as to Minor and Liberty Mutual" based on language contained in Code § 64.2-1213. That statute provides that "[t]he report, to the extent to which it is confirmed by an order of the circuit court upon exceptions filed pursuant to subsection B of § 64.2-1212 . . . shall be taken to be correct, except so far as it may . . . be surcharged or falsified." However, if a party files exceptions to the report, that party may not bring a suit to surcharge or falsify the report; rather, "the action of the court on the report *shall be final as to such party*, except that it may be appealed from as in other suits." Code § 64.2-1213 (emphasis added). Based on this language, the Commissioner argues that the trial court's confirmation of the Commissioner's report was a final order for purposes of appeal. We disagree.

We do not read the language contained in Code § 64.2-1213 (specifically the use of the word "final") as altering the traditional analysis of whether an order is a final, appealable order under Rule 1:1[6] by per se transforming a circuit court's confirmation of a commissioner's report into a final order for purposes of appeal. Instead, we read the cited language simply as a restriction that the General Assembly has placed upon certain litigants—those who have already had their opportunity to challenge a commissioner's factual findings and legal conclusions contained in her report—in potential future legal actions. *See Lister v. Virginia Nat'l Bank.*, 209 Va. 739, 741-42 (1969) (holding that former Code § 26-34 "does not prohibit a beneficiary,

_____

[6] Rule 1:1(b) provides:

> Unless otherwise provided by rule or statute, a judgment, order, or decree is final if it disposes of the entire matter before the court, including all claim(s) and all cause(s) of action against all parties, gives all the relief contemplated, and leaves nothing to be done by the court except the ministerial execution of the court's judgment, order, or decree.

who did not file exceptions to the commissioner's report within the statutory period (now 15 days), from seeking equitable relief by instituting a suit in proper time to surcharge and falsify an [e]x parte settlement of the fiduciary's account. A beneficiary may elect whether to file exceptions to the report or to institute a suit to surcharge and falsify. If he files exceptions to the report then he is barred from prosecuting such a suit.").

In addressing the question of timeliness of appellants' notice of appeal in this matter, we therefore turn to the traditional legal analysis concerning Rule 1:1 and whether a trial court's order "dispose[d] of the whole subject, [gave] all the relief contemplated, . . . and [left] nothing to be done in the cause save to superintend ministerially the execution of the order." *Jefferson v. Commonwealth*, 298 Va. 473, 475 (2020) (quoting *Daniels v. Truck & Equip. Corp.*, 205 Va. 579, 585 (1964)).

Here, as appellants correctly point out, though the trial court confirmed the Commissioner's report in November of 2021, those orders did not "dispose[] of the entire matter," pursuant to Rule 1:1(b), because the issues pertaining to the propriety of the process carried out by the Commissioner, as well as bond forfeiture, were still to be decided. Even though the trial court had confirmed the Commissioner's report, the concurrent petition filed by the Commissioner to remove Minor as fiduciary and forfeit bond was still pending before the trial court. In fact, after the trial court confirmed the Commissioner's report in November of 2021, the trial court held an additional show cause hearing on the issue of bond forfeiture. The trial court explicitly took the matter of bond forfeiture under advisement, not ruling on the legal arguments raised by appellants until it issued its April 11, 2022 letter opinion. Further, the trial court only formally memorialized its rulings regarding bond forfeiture and the process carried out by the Commissioner in its final order, entered on June 3, 2022. "A 'trial court speaks only through its written orders' and written 'orders speak as of the day they were entered.'" *Jefferson*,

298 Va. at 477 (quoting *Davis v. Mullins*, 251 Va. 141, 148 (1996)). The final order entered by the trial court on June 3, 2022, was the final, appealable order in this case. Therefore, appellants' notice of appeal filed on June 28, 2022, was timely.[7]

> V. *The hearing process carried out by the Commissioner complied with her statutory duties and authorities.*

Appellants' first assign error to the trial court's ruling by arguing that the entire proceeding was a "nullity" because it was instituted by Eric and Cynthia. Before the Commissioner approved the final accounting filed by Minor, Eric contacted the Commissioner, notifying her that Minor had underreported the assets in her initial and amended inventories and sought a hearing in front of the Commissioner pursuant to Code § 64.2-1209. That statute provides that:

> Any interested person, or the next friend of an interested person, may, before the commissioner of accounts, insist upon or object to anything which could be insisted upon or objected to by such interested person if the commissioner of accounts were acting under an order of a circuit court for the settlement of a fiduciary's accounts made in a suit to which such interested person was a party.

Appellants argue that Eric and Cynthia were not "interested persons" pursuant to that statute. Appellants acknowledge that the Commissioner did not file a report with the trial court concerning the hearings she held on December 1, 2020, January 5, 2021, and February 3, 2021. Nevertheless, appellants argue that the Commissioner "receive[d] evidence upon which she later based her October 15, 2021, Report."

Appellants believe this to be a standing issue, citing to *Johnston Mem'l Hosp. v. Bazemore*, 277 Va. 308, 312 (2009), for the proposition that Virginia "jurisprudence is clear that

---

[7] In coming to this conclusion, we expressly decline to opine on whether, in a different case where no petition was pending, a trial court's confirmation of a commissioner's report would constitute a final order for purposes of appeal.

- 15 -

when a party without standing brings a legal action, the action so instituted is, in effect, a legal nullity." Appellants argue that, because Eric and Cynthia were not "interested persons" under the statute, "the only thing the Commissioner could do with the objections before her would be to dismiss the objections for lack of standing." Appellants also make a similar argument with respect to the Commissioner herself, arguing that she also was not an "interested" party pursuant to Code § 64.2-1209. These arguments fail for the same reason: they misunderstand the proceedings carried out below, as well as the nature of the position of the Commissioner of Accounts.

"The law with respect to the settlement of fiduciary accounts prior to the adoption of the Code of 1849 was in a very unsatisfactory condition." *Carter's Adm'r*, 108 Va. at 206. In an effort to remedy these issues, the General Assembly created the office of the commissioner of accounts. The language from the revisors' report illustrates their recognition of the pitfalls that existed at the time concerning the proper settlement and distribution of estates:

> Far better would it be for him that his accounts should be settled correctly *in the first instance*, . . . [and that] . . . it must be a great improvement to have such accounts settled by commissioners holding their offices under appointment of the circuit courts; commissioners appointed such because of their acquaintance with the principles on which the accounts should be stated, and from whom, therefore, *a settlement on proper principles* may generally be expected.

*Report of Revisors of Virginia Code*, 1849, ch. 132, p. 676 n.* (January 1849) (emphasis added).

Further, the Supreme Court of Virginia has recognized "how minute, how careful, and how sufficient [are the provisions laid out in the Virginia Code] for the settlement of the accounts of fiduciaries. [The law] is full, ample, and complete. It guards and protects every interest as amply as could be done by a formal suit in chancery." *Carter's Adm'r*, 108 Va. at 213. "[A]t every step of [her] administration the law provides proper machinery by which the

- 16 -

fiduciary can be compelled to collect and distribute the funds committed to [her] care, and to settle [her] accounts showing the manner in which [the] trust has been executed." *Id.*

Code § 64.2-1200 provides that "[t]he commissioner of accounts shall have general supervision of all fiduciaries admitted to qualify in the court or before the clerk of the circuit court and shall make all *ex parte* settlements of the fiduciaries' accounts." That statute further provides that "[e]ach commissioner of accounts shall retain the power of supervision over every account, matter, or thing referred to him until a final account is approved for such account, matter, or thing . . . ." Trustees, conservators, and other types of fiduciaries have an obligation to "account before the Commissioner of Accounts." Code § 64.2-1206. Code § 64.2-1312 provides that "[t]he commissioner of accounts shall state, settle, and report to the circuit court an account of the transactions of a fiduciary, as provided by law." Code § 64.2-1203 provides that "Commissioners of accounts . . . shall have the power to issue subpoenas to require any person to appear before them and to issue subpoenas duces tecum to require the production of any documents or papers before them." And Code § 64.2-1204 provides that:

> When any fiduciary of an estate has given a bond to the court and
> then absconds with or improperly disburses any or all of the assets
> of the estate, the commissioner of accounts may petition the court
> in which the order was made conferring his authority on the
> fiduciary and ask the court to order that such bond be forfeited.

The statutory scheme places affirmative duties upon both the fiduciary and the Commissioner. As laid out above, circuit courts in Virginia have jurisdiction over fiduciary matters, including the proper administration of estates. The Commissioner of Accounts serves at the pleasure of the trial court, and the purpose of the Commissioner is to aid the trial court in carrying out the prompt settlement of fiduciaries' accounts and the proper distribution of estates. The Commissioner's duty in this regard is to assess the fiduciaries' inventory and accountings, as well as any evidence before it, and file a report with the trial court, recommending a disposition

- 17 -

for the trial court to adopt. This duty includes an assessment of whether a fiduciary has "improperly disburse[d] any or all of the assets of the estate." Code § 64.2-1204. The Commissioner thereby serves as the first step in the process of administering estates. In doing so, the Commissioner's duty is not simply to ensure the job is done, but to make certain that the job is done right.

Here, we agree with the trial court that "while [Code § 64.2-1209] does prescribe a method by which the Commissioner can have a hearing, the statute does not say that is the *only* way a commissioner may conduct a hearing." The General Assembly has charged the Commissioner with the duty and authority to ensure the correct administration of estates. Pursuant to this duty, Code § 64.2-1203 grants the Commissioner the power to subpoena "any person to appear before them." The record demonstrates that that is what occurred here, and we see no issue with that process. The investigatory hearings that appellants complain of were well within the Commissioner's "supervisory" authority outlined in Code § 64.2-1200, and her authority to require "any person" to appear before her pursuant to Code § 64.2-1203. Further, the Commissioner was carrying out her statutory obligation to ensure Minor made a "complete and proper account." Code § 64.2-1216(A). When Minor failed to do so, the Commissioner was required to take steps against Minor, and ultimately bring the issue to the trial court's attention pursuant to Code §§ 64.2-1215 and -1216. Finally, upon learning of Minor's "improper disburs[ement]" of certain estate funds, the Commissioner was entitled to "petition the court . . . and ask the court to order that [the] bond be forfeited." Code § 64.2-1204.

The trial court considered the petition and accompanying report from the Commissioner, as well as the exceptions filed by Minor and Liberty Mutual to that report, and ultimately confirmed the Commissioner's report, subsequently entering an order forfeiting a portion of the bond. Given that the proceedings below were properly conducted pursuant to the

Commissioner's statutory authority—and not as the result of Code § 64.2-1209—nothing about this process was improper as to constitute error.

VI. *The Commissioner remained a neutral arbiter, notwithstanding the statements she made.*

Finding no success in their attempt to challenge the hearing process carried out by the Commissioner, appellants next call into question the propriety of the Commissioner herself. Appellants seize upon several statements made by the Commissioner during the investigatory hearings wherein she intimated that, notwithstanding the fact that Eric and Cynthia may not be "interested persons" under Code § 64.2-1209,[8] she, herself, was an "interested person" for purposes of the hearing, that she "had standing in the case," and that she was not "neutral." Appellants argue that these statements evince bias on the part of the Commissioner and that the hearing process, in turn, violated their due process rights. In making this argument, appellants cite to *Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573 (2017), for the proposition that due process "includes, among other things . . . the opportunity to be heard before an impartial tribunal." *Id.* at 585 (McCollough, J., concurring). Further, and notwithstanding their arguments concerning the Commissioner's alleged bias, appellants also argue that the process generally was unfair because the Commissioner engaged in both an adjudicatory role *as well as* a prosecutorial role. This, appellants argue, also violates their due process rights.

---

[8] In agreeing with appellants that Eric and Cynthia were not "interested person" under Code § 64.2-1209, the trial court ruled that an "interested person" was a person who had standing. In the context of the statute, the trial court explained that that meant a person who had a "pecuniary interest" in the outcome of the case, a definition which neither Eric nor Cynthia meet. We express no opinion on the correctness of the trial court's adopted definition of "interested person," determining that we can resolve the case on other grounds. *See Commonwealth v. White*, 293 Va. 411, 419 (2017) ("The doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available." (cleaned up) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))).

Here, the record makes clear that the Commissioner, in making the assertions that she was "interested," "had standing" in the case, and was not "neutral," merely intended to express the fact that she, as Commissioner of Accounts, had a duty to assess the evidence presented to her and ensure the proper administration and distribution of Mr. Wilder's estate. For instance, during the January 5 hearing, in response to the contention that no interested party had come forward with objections, the Commissioner replied: "I appreciate that. But you know, I also, as the Commissioner of Accounts, have an interest in this, as well. And this statute provides me with general authority over fiduciaries." And further, during the hearing on February 3, the Commissioner stated:

> I think that, given my duties under 64.2-1200, and what this office is charged with, now that these objections have been brought to my attention, I believe I do have the authority to move forward and hear [the] case as to these funds that were allegedly used by Ms. Minor.

Such an "interest" is not improper, and the Commissioner's statements do not render her an impartial adjudicator. In fact, the trial court came to this very conclusion, stating: "[M]y understanding [of these statements is that] she was referring to . . . the duties of the Commissioner of Account[s]." The trial court further acknowledged that "although the words that she used might not have been the most artful words to use in that context, [she was saying] that the Commissioner of Accounts had duties and obligations." On appeal, "we will not fix upon isolated statements . . . taken out of the full context in which they were made[] and use them as a predicate for holding the law has been misapplied." *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977). The trial court's finding in this regard is entitled to deference, and we cannot say that such a finding was plain error. *Heath*, 38 Va. App. at 732.

Similarly, appellants argue that the Commissioner violated their due process rights by exercising both "enforcement" and "adjudicatory" authority. Appellants rely on *Williams v.*

- 20 -

*Pennsylvania*, 579 U.S. 1 (2016), for the proposition that "an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Id.* at 8. Further, citing to a Pennsylvania case, *Lyness v. Pennsylvania*, 605 A.2d 1204 (Pa. 1992), they argue that any appearance of bias and partiality, including "commingling prosecutorial and adjudicatory functions . . . must be viewed with deep skepticism." *Id.* at 1207.

This assignment of error again misunderstands the role of a Commissioner of Accounts and the statutory scheme established for the protection of fiduciary accounts. Though the Commissioner is a "quasi-judicial" officer, *Phillips*, 300 Va. at 306, and is tasked with generally supervising fiduciaries in Virginia, Code § 64.2-1200, the Commissioner does not act as a "prosecutor" or "enforcer" in carrying out her duties. The Commissioner makes findings of fact and conclusions of law in her report, which, upon submission to the trial court, are merely *recommendations* which the trial court may accept or reject. *See Henderson*, 297 Va. at 712. "[F]rom the very necessity of their appointment and the nature of their office, their work is subject to the review of the court. It may accept or reject it, in whole or in part, as its judgment, upon such review, may dictate, whether it be of law or fact." *Gray*, 294 Va. at 276-77 (alteration in original) (quoting *Shipman*, 91 Va. at 477). The statutes governing Commissioners of Accounts and requiring them to make reports to the trial court do not place upon Commissioners the duty to act as a prosecutor. The Commissioner is simply required to "report every account stated under [Code § 64.2-1200 et seq.] . . . along with any matters specially stated deemed pertinent by the commissioner of accounts." Code § 64.2-1210. If the fiduciary takes issue with the report filed by the Commissioner, the fiduciary may file her own exceptions to the Commissioner's report. Code § 64.2-1212. However, the Commissioner bears no duty to *prove* the facts, opinions, and legal conclusions contained in her report. Rather, the duty to properly account for all funds under her control as fiduciary *always remains with the fiduciary*, and she is

personally liable for a breach of her fiduciary duty. *See* Code § 64.2-2021(D), (E) (setting out the "[g]eneral duties and liabilities of [a] conservator," expressly clarifying that "[a] conservator stands in a fiduciary relationship to the incapacitated person for whom [s]he was appointed conservator," and requiring that "[a] conservator shall comply with and be subject to the requirements imposed upon fiduciaries generally under . . . [Code] § 64.2-1200 et seq., . . . specifically including the duty to account set forth in § 64.2-1305"). Therefore, the Commissioner here did not take on the role of prosecutor or enforcer.[9] Instead, as has been explained above, the Commissioner merely aided the trial court in the proper administration and distribution of Mr. Wilder's estate. No error arises from this.

In the same vein, appellants argue that the trial court erred by not dismissing the action "where the Commissioner sought referral of a matter for the Commissioner's adjudication to determine whether a fiduciary should be removed and her bond be forfeit and simultaneously asked the Court to remove the fiduciary and order her bond forfeit." Appellants' brief makes clear that this assignment of error is predicated upon the same alleged "lack of impartiality" of

---

[9] Though appellants do not come right out and say it, implicit in their argument concerning these "dual roles" is the contention that, in *any* case where a commissioner determines that the evidence she has received indicates the misuse or misappropriation of funds, the Commissioner must delegate the task of filing the petition—and possibly the report—to a separate individual, such as an assistant commissioner appointed pursuant to Code § 64.2-1201, so as to avoid any appearance of bias or impropriety. It seems to us that such a sweeping rule, if provident, would have been expressly stated by the General Assembly in the relevant statutory scheme. In fact, Code § 64.2-1201 provides both the trial court and the Commissioner with discretion in making the determination whether she should be recused from the administration and supervision of a certain case. *See* Code § 64.2-1201 ("The judges of each circuit court may appoint, in addition to commissioners of accounts, assistant commissioners of accounts who shall perform all the duties and exercise all of the powers required of the commissioner of accounts in all cases in which the commissioner of accounts is so situated that he cannot perform the duties of his office or in which the commissioner of accounts is of the opinion that it is improper for him to act. . . . Assistant commissioners of accounts shall act only in such cases that the commissioner of accounts delegates to him."). We have found no evidence in the relevant statutes of the broad-sweeping rule that appellants advance, and we decline to adopt such a rule here.

the Commissioner, as well as the same arguments concerning the "dual roles" she supposedly engaged in. As we have already refuted those notions—and given the statutory obligations incumbent upon the Commissioner to report fiduciary malfeasance to the trial court, and, where appropriate, initiate proceedings against such a fiduciary—this assignment of error fails.

> VII. *The assignment of error related to Eric and Cynthia's statutory remedy misunderstands the nature of the proceedings below.*

Appellants next argue that even if Eric and Cynthia were "interested persons" under Code § 64.2-1209, their remedy was limited to a suit to surcharge and falsify under Code § 64.2-1213.[10] Appellants' argument again misunderstands the nature of the proceedings below. The trial court's order and rulings were not made *on behalf of* Eric and Cynthia, as "interested persons" proceeding pursuant to Code § 64.2-1209. In fact, neither Eric nor Cynthia were parties to the instant case; they received no judgment or remedy, and their legal rights were not affected in any way by the trial court's ruling. Therefore, any arguments related to what remedies may or

---

[10] Code § 64.2-1213 provides that an approved inventory of the assets contained in an estate "shall be taken to be correct, except so far as it may, in a suit, in proper time, be surcharged or falsified." A suit to surcharge and falsify an accounting entails the "surcharge" of the account (compensation for misspent funds) and "falsification" (rejection of the prior proposed accounting as improper). The Court in *Listor*, explained in detail the mechanics of a suit to surcharge and falsify:

> When errors or mistakes only are shown to exist in an account the settlement will not be opened, as will be done where fraud or accident affecting the entire action of the probate court is shown, but the person alleging the error or mistake in the account will be permitted to surcharge and falsify it. The distinction between opening an account and surcharging and falsifying it is that when an account is opened the whole of it becomes subject to review, while when it is merely surcharged and falsified the inquiry is limited to particular items alleged to have been improperly included or omitted, and in all other respects the account is left to stand as it is.

209 Va. at 742 (citation omitted).

may not have been available to Eric and Cynthia are not relevant to the instant case.[11]  Instead, the trial court, in evaluating the report and recommendations filed by the Commissioner, was tasked with determining whether Minor had properly accounted for Mr. Wilder's estate, as his conservator.  Determining that she had not properly accounted for Mr. Wilder's estate, but instead had abused her powers as conservator, the trial court correctly entered an order finding that Minor had violated her fiduciary duties, thereafter revoking her bond.  Such order was not error and had no connection with the initial objections brought to the attention of the Commissioner by Eric and Cynthia.

> VIII.  *The assignments of error related to the evidence considered by the Commissioner fail because appellants failed both to offer certain evidence before the Commissioner and to proffer what evidence they would have actually offered.*

Appellants next challenge the ruling below on the ground that the Commissioner failed to consider certain evidence.  Specifically, appellants argue that the Commissioner: (1) "failed to apply the presumptions under Virginia Code § 6.2-606 concerning multiple-party accounts held by spouses and failed to consider evidence that an account in question contained non-conservatorship assets," and (2) "failed to consider evidence that the Administrator of the Estate of Eric W. Wilder assented to and ratified certain distributions."

---

[11] To the extent that appellants argue on brief that *any party* (including the Commissioner) would be required to first file suit to surcharge and falsify the approved inventory, that argument is waived as it was not contained in appellants' seventh assignment of error, which states, in whole: "The [trial] [c]ourt erred by not dismissing the proceeding where, even if the original objectors were 'interested persons' and had standing to object, their remedy was limited to a suit to surcharge and falsify under Virginia Code § 64.2-1213."  This language is clearly tailored only towards Eric and Cynthia, as the "original objectors."  Rule 5A:20(c)(1) ("Only assignments of error listed in the brief will be noticed by this Court."); *see also Banks v. Commonwealth*, 67 Va. App. 273, 289 (2017) ("This Court is limited to reviewing the assignments of error presented by the litigant.  [W]e do not consider issues touched upon by the appellant's argument but not encompassed by his assignment of error. (internal citations omitted)).

Regarding the former assignment of error, appellants argue that any alleged joint accounts held by Mr. and Mrs. Wilder are governed by Code § 6.2-606. That statute states that any account owned by a married couple "shall belong to them equally." In *Lewis v. House*, 232 Va. 28 (1986), the Supreme Court of Virginia wrote, regarding this statutory provision: "[w]e construe the word 'equally' to mean 'in equal proportions.' . . . [We find no merit in the] contention that, because a joint account belongs to spouses 'equally,' the entire account is owned by each." *Id.* at 31. Appellants argue that "[t]he Commissioner received no evidence of the intent of the parties regarding these accounts . . . [and] found that any failure by Ms. Minor to account for funds, whether they belonged to [Mr.] Wilder or [Mrs.] Wilder constituted grounds for a bond forfeiture." Appellants also argue that Minor did not have a duty to account for joint accounts held by both Mr. and Mrs. Wilder.

In other words, the general thrust of appellants' argument is: (1) the funds contained in Account -4200 were joint funds owned by both Mr. and Mrs. Wilder, (2) Code § 6.2-606 requires that these funds be viewed separately, not jointly, as between the two of them, (3) Minor was only a fiduciary of Mr. Wilder's assets, not Mrs. Wilder's, and (4) the court should view any funds used by Minor as Mrs. Wilder's funds, not Mr. Wilder's funds, thereby exculpating Minor of any violation of her fiduciary duties. Similarly, appellants also argue that the Commissioner did not receive any evidence with regard to *how Mr. and Mrs. Wilder may have viewed the funds in Account -4200*—i.e., that it is possible that the couple would have viewed *most or all* of the funds contained in Account -4200 as belonging to *Mrs. Wilder*, thereby placing those funds outside of the fiduciary control and responsibility of Minor, as conservator for Mr. Wilder's estate.

To the extent that appellants argue that Minor had no duty to account for bank accounts held jointly by Mr. and Mrs. Wilder, that contention is belied by the trial court's initial orders

appointing Minor as temporary and then permanent conservator of Mr. Wilder's estate. Those orders specifically provided:

> It is therefore ORDERED, ADJUDGED AND DECREED: . . . That Kishna Minor is hereby appointed permanent Conservator for Eric Witt Wilder, with all the rights powers, and duties, set forth in Virginia Code §§ 64.2-2021, 64.2-2022, and 64.2-2023, including but not limited to: the power to access, spend, transfer, sell, liquidate, encumber, and otherwise manage Respondent's income and assets, *including any accounts jointly titled with Thelma Wilder.*

(Emphasis added). The trial court granted Minor the power to manage accounts jointly held by Mr. and Mrs. Wilder. Minor therefore had a duty to properly account for any such joint accounts, and further had the duty not to misappropriate any funds contained in those joint accounts. *See Asberry's Adm'r v. Asberry's Adm'r*, 74 Va. (33 Gratt.) 463, 469 (1880) ("The use of the assets by the personal representative [conservator or guardian] for his own private purposes, or for the payment of his own debts, is necessarily a misapplication of trust funds, and a breach of trust. . . . These are elementary principles.").

Further, to the extent that appellants argue that the Commissioner erred by not receiving pertinent evidence on the intent of Mr. and Mrs. Wilder as to how the funds contained in the joint accounts should be disbursed or to whom they belonged, appellants had the opportunity to introduce any such evidence in front of the Commissioner during the September 29, 2021 hearing, but chose not to. Because appellants did not offer any such evidence at that hearing, they waived any argument regarding this issue in front of the trial court, and subsequently here on appeal. *See Heath*, 38 Va. App. at 733-34 (finding no abuse of discretion where trial court refused "to consider the . . . issue on the merits, for the first time [in front of the trial court, where]" "wife had the opportunity to request and present evidence on the issue [in front of the commissioner] but failed to do so").

Appellants have also failed to proffer on appeal what that evidence may have been, how any such evidence would affect our analysis, and whether and how that evidence would affect the trial court's final order forfeiting the bond. Rule 5A:20(d), (e) (Appellants' opening brief must contain "[a] clear and concise statement of the facts that relate to the assignments of error" as well as "the argument (including principles of law and authorities) relating to each assignment of error.").

Regarding the latter assignment of error—that the Commissioner failed to consider any evidence that Mrs. Wilder may have assented to and ratified the improper transactions and distributions made by Minor—appellants note that the Commissioner gave notice of the September 29, 2021 hearing to Mrs. Wilder, the "only interested person who could have asked the Commissioner for a hearing under Va. Code § 64.2-1209." Because Mrs. Wilder did not intervene or object to Minor's conduct in managing Mr. Wilder's estate, appellants argue that Mrs. Wilder constructively assented to and ratified Minor's conduct.

This assignment of error fails for reasons similar to the one above. If a fiduciary acts regarding estate property to her own advantage, that action is only excused if she affirmatively shows that:

> [T]he beneficiary, being *sui juris*, had full information and complete understanding of all the facts concerning the property and the transaction itself, and the person with whom [s]he was dealing, and gave a perfectly free consent, and that the price paid was fair and adequate, and that [s]he made to the beneficiary a perfectly honest and complete disclosure of all the knowledge or information concerning the property possessed by [her]self, or which he might, with reasonable diligence, have possessed, and that [s]he has obtained no undue or inequitable advantage, and especially if it appears that the beneficiary acted in the transaction upon the independent information and advice of some intelligent third person, competent to give such advice, then the transaction will be sustained by a court of equity.

- 27 -

*Owens v. Owens*, 196 Va. 966, 972-73 (1955) (quoting 3 Pomeroy on Equity Jurisprudence, § 958(d), p. 814 (5th ed. 1941)). The burden was therefore upon Minor to show that the transactions and disbursements she made were freely consented to by Mrs. Wilder. However, while appellants had ample opportunity to present evidence regarding Minor's knowledge of the ownership of Account -4200 and the myriad disbursements she made, they chose not to. Our holding in *Heath* therefore bars any consideration of those arguments on appeal. *See Heath*, 38 Va. App. at 733-34. Further, appellants again failed to proffer on appeal what evidence, if any, they would have introduced to prove Mrs. Wilder's consent or the propriety of the expenditures. *See* Rule 5A:20(d), (e). Instead, appellants argue that the trial court should have intuited that Mrs. Wilder's failure to intervene and object illustrated that she "constructively assented" to the inappropriate transactions and disbursements. This we decline to do, given the "presumption of invalidity" set out in *Owens*.

Finally, appellants assign error to the Commissioner's reliance "upon . . . *ex parte* communications and documents submitted after the hearing" and her rejection of "Appellant Liberty Mutual's suretyship defenses, specifically by impairing the opportunity for full discovery based on the *ex parte* evidence." Specifically, appellants point to an email from Brian sent after the September 29, 2021 hearing wherein Brian purportedly claimed that he was Mrs. Wilder's power of attorney, and represented that he objected to Minor's mismanagement of Mr. Wilder's estate on behalf of Mrs. Wilder. Appellants argue that they were not allowed an opportunity to respond to the email before the Commissioner filed her report. Appellants argue that they would have had certain "suretyship defenses" available to them, "including laches," and that they were "precluded . . . from engaging in discovery, including issuing third-party subpoenas and/or conducting third-party depositions to gather the facts necessary to develop [their] defenses."

Because the trial court did not conduct its own evidentiary hearing, appellants contend that they were denied "the legal tools to put on a defense."

This argument yet again misunderstands the proper roles and duties of the actors in this case. Mrs. Wilder was not required to object to Minor's conduct; Minor was required *by the Code of Virginia* to fulfil her fiduciary duties. *See* Code §§ 64.2-1305 and -2021. The Commissioner was required to ensure the prompt and proper administration and distribution of Mr. Wilder's estate, and report to the trial court her factual findings, legal conclusions, and her recommendations. In that regard, Minor had ample opportunity to present evidence of her suretyship defenses—assent, ratification, laches, etc.—at the multiple hearings that the Commissioner held throughout 2020 and 2021. Minor failed to offer any evidence of such defenses before the Commissioner. And further, Minor failed to explain her actions by providing a proper second and final accounting to the Commissioner. Based on the evidence actually presented to the Commissioner during the several hearings she conducted, there was sufficient evidence to support the trial court's ruling below that Minor failed to fulfil her fiduciary duties and to properly account for the assets of Mr. Wilder's estate. Further, to the extent that the appellants argue that they were not given an opportunity to conduct discovery regarding Brian's email specifically, the report filed by the Commissioner makes clear that the Commissioner did not rely on Brian's email in coming to the conclusions she did in her report. Concerning the email, the Commissioner noted in her report that "it is not necessary for [Mrs.] Wilder to object" to Minor's misuse of the funds under her control. We think it is clear that the email was not a pivotal piece of evidence relied upon by the Commissioner or the trial court. Therefore, no evidentiary hearing or discovery process was required in order to develop a factual record concerning this email.

CONCLUSION

The only connection to Code § 64.2-1209 in the proceedings below was that the Commissioner initially held three investigatory hearings based on complaints by Eric and Cynthia about the amount of money detailed in the initial and amended inventories as transferred to Mrs. Wilder upon Mr. Wilder's death. It was those complaints which led to the discovery of the hidden account and other questionable disbursements by Minor. Nevertheless, the Commissioner did not file a report based on these hearings. Every action she took after those hearings was independent of Eric and Cynthia's complaints. Instead, she acted pursuant to her statutory duties to determine the propriety of the second and final accounting filed by Minor, relying on her own statutory authority to subpoena "any person" and bank records pursuant to Code § 64.2-1203, demand a proper accounting pursuant to Code § 64.2-1216, and seek Minor's removal and forfeiture of her bond when such accounting was not provided pursuant to Code § 64.2-1204. Further, the Commissioner's neutrality cannot fairly be called into question here, based on the statements taken out of context during the investigatory hearings. The record demonstrates that she acted appropriately, pursuant to her statutory duties, in filing her report and offering her recommendations to the trial court. Additionally, the contention that the Commissioner took on "dual roles" in performing her duties is belied by the statutory scheme contained in Code §§ 64.2-1200 et seq. and 64.2-1300 et seq. Finally, none of the evidentiary issues that appellants raise are meritorious. The trial court therefore did not err in confirming the Commissioner's report and entering a final order forfeiting Minor's bond.

*Affirmed*.